▆ In the Matter of KAYLA J., a Child Alleged to be Abused. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Appellant; MICHAEL J., Respondent. [903 NYS2d 601]—

Garry, J. Appeal from an order of the Family Court of Albany County (Duggan, J.), entered January 9, 2009, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be abused.

Respondent is the father of a child born in 2001. He and the

child's mother married in 2000 and separated in 2004.[1] In subsequent custody proceedings, the mother became the child's primary physical and legal custodian, and respondent was awarded designated periods of visitation. Beginning in about September 2005, the mother repeatedly petitioned for modification, alleging, among other things, that respondent was sexually abusing the child. These allegations were never judicially resolved, as the various petitions culminated in stipulated orders, were withdrawn, or remained unresolved when this proceeding was commenced. As a result of the ongoing litigation, respondent had few periods of unsupervised visitation; during parts of 2005 and 2006, his visitation was either supervised or suspended, and he had no unsupervised visits after October 2006.

In November 2007, petitioner commenced this proceeding alleging that respondent had abused the child by subjecting her to sexual contact. The petition alleged that, in February 2007, the child allegedly made sexual comments and displayed sexualized behavior to several cousins, including inviting one cousin to play a game called "private doctor." The child told several adults, including her mother and her two therapists, that she played this game with her father and that it involved removing clothing, looking at each others' genitals, kissing, and hugging. The petition further alleged that, beginning in November 2005, the child had made other disclosures of sexual contact with respondent and had displayed sexualized behavior. Family Court dismissed the petition following the fact-finding hearing. Petitioner appeals.

In a lengthy, detailed and careful decision, Family Court evaluated the reliability of the interviewing techniques used by petitioner's caseworker and the child's therapists, the mother's credibility, and the reliability and corroboration of the child's disclosures, and concluded that petitioner had failed to carry its burden of proof by the requisite preponderance of the evidence (see Family Ct Act § 1046 [b] [i]; Matter of Jordan XX., 53 AD3d 740, 740 [2008]). Resolution of this very difficult case turned almost entirely on issues of credibility. " 'Family Court's findings are entitled to great deference especially where the critical evidence is testimonial, in light of the court's ability to assess the witnesses' credibility, and should generally not be disturbed absent a conclusion that they lack a sound and substantial basis in the record' " (Matter of Blaize F., 50 AD3d 1182, 1184 [2008], quoting Matter of Nathaniel TT., 265 AD2d 611, 614, [1999], lv

1. Though not fully documented in the record, Family Court provided this history, apparently based on the court file.

*denied* 94 NY2d 757 [1999]). Here, although the record would also have supported a different conclusion (*see Matter of Blaize F.*, 50 AD3d at 1184), we find that the court's conclusions are adequately supported by a sound and substantial basis in the record.

Family Court's decision rested in large part on its "serious reservations" about the credibility of the mother's testimony. The court found that, without intentionally falsifying her testimony, the mother's animosity toward respondent and what the court described as her "strong investment" in a finding that he had sexually abused the child had colored and distorted her observations, memory, and testimony to such a degree that the child's disclosures to the mother could not be found to have been reliably and accurately reported. As to respondent's testimony that he never abused his daughter, the court acknowledged his strong motivation to lie, but also found that nothing in his testimony detracted from his credibility. Without directly determining whether respondent was telling the truth, the court accorded some weight to his willingness to subject himself to the test of cross-examination and concluded that on the whole, his testimony "weigh[ed] modestly in his favor." It was Family Court's role to make these credibility determinations, which are not to be disturbed unless they are "clearly unsupported by the evidence" (*Matter of Addie F.*, 22 AD3d 986, 987 [2005]). According the appropriate "[g]reat deference" to the court's opportunity to view the witnesses and hear the testimony (*Matter of Dana A. v Martin B.*, 72 AD3d 1136, 1138 [2010]), we find that these determinations are supported by a sound and substantial basis in the record.

Family Court further found that the reliability of the child's disclosures to therapists, caseworkers, and others had been tainted by the mother's influence and by what the court found to be the suggestiveness of multiple interviews and other examinations undergone by the child, whom the court described as "the most questioned, examined, interviewed, evaluated and treated child" it had ever encountered. Petitioner objects that in reaching this conclusion, the court improperly considered information outside the record, in that a number of the interviews and examinations it enumerated were not discussed during the hearing. The court had advised the parties that it intended to take judicial notice of its prior proceedings and of the contents of its previous decisions and orders; to the extent that these documents formed the basis of the court's knowledge of the child's history, it was entitled to rely on them, at least for background (*see Matter of Andrew U.*, 22 AD3d 926, 926-927

[2005]; *see also Matter of Martin v Martin*, 61 AD3d 1297, 1298 n [2009]; *Matter of Anjoulic J.*, 18 AD3d 984, 986 [2005]). Moreover, the court did not discuss the results of the previous examinations, nor appear to rely in any manner on their substantive content; they were simply listed for the purpose of demonstrating a basis for the concern that the reliability of the child's disclosures had been tainted by "the fog created by the multiplicity of interviews." Petitioner does not contest the accuracy of this history, and given the limited purpose of the court's reference to these events and the presence of sufficient support for its factual findings in the record evidence, we find no error requiring reversal (*see Matter of Treider v Lamora*, 44 AD3d 1241, 1243 [2007], *lv denied* 9 NY3d 817 [2007]; *compare Matter of Nicole VV.*, 296 AD2d 608, 613 [2002], *lv denied* 98 NY2d 616 [2002]).

There is support in the record for Family Court's conclusion that the reliability of the child's disclosures was affected by adult influence or coaching. Several of her reported comments reflected apparently adult viewpoints or legal knowledge, such as her reported wish to change her last name to make it more difficult for her father to find her. The record also supports the court's conclusion that an insufficient causal link was established between the child's indisputably age-inappropriate sexual knowledge and respondent's alleged misconduct. No time frames were established by any witness for respondent's alleged act or acts of sexual misconduct, which the petition vaguely alleged to have taken place before November 2005 and/or before March 2007. Respondent had limited unsupervised contact with the child at any time, and at the time of the 2007 intensification of her sexualized behavior and comments that led to these proceedings, no unsupervised contact at all. Moreover, there was evidence that the child had been exposed to sources of sexual knowledge unrelated to contact with respondent, such as age-inappropriate television programs and the child's own comment, reported by respondent and the paternal grandmother, that she had learned certain sexual behavior at the mother's house.

Finally, there is record support for Family Court's conclusion that the child's out-of-court statements were insufficiently corroborated. Such statements are admissible in evidence at fact-finding hearings and, when adequately corroborated, may support a finding of abuse or neglect (*see* Family Ct Act § 1046 [a] [vi]; *Matter of Kayla F.*, 39 AD3d 983, 984 [2007]). While "a relatively low degree of corroborative evidence is sufficient" (*Matter of Joshua QQ.*, 290 AD2d 842, 843 [2002]), there is a

"threshold of reliability" that must be met (*Matter of Zachariah VV.*, 262 AD2d 719, 720 [1999], *lv denied* 94 NY2d 756 [1999]). "Whether this corroboration requirement has been satisfied is a 'fine judgment' entrusted in the first instance to Family Court, which has the advantage of having heard and seen the various witnesses" (*Matter of Jared XX.*, 276 AD2d 980, 981 [2000]), quoting *Matter of Christina F.*, 74 NY2d 532, 536 [1989]).

The child's repeated disclosures to several adults are not, in themselves, sufficient since " 'the mere repetition of an accusation by a child is not sufficient to corroborate his or her prior statement' " (*Matter of Sasha R.*, 24 AD3d 902, 903 [2005], quoting *Matter of Jared XX.*, 276 AD2d at 981). Petitioner contends, however, that her statements were fully corroborated by the testimony of her two therapists, who each opined that the child had been sexually abused by her father. We disagree with Family Court that this testimony was unacceptable as validation evidence on the ground that the therapists were not retained as objective investigators. Although both therapists were retained for treatment rather than to determine whether the child had been abused, a therapist's testimony may be received as corroboration of a child's out-of-court statements; "[a]n expert's relationship to the party offering [him or] her does not disqualify the witness from giving opinion evidence and any bias [the witness] may have had could be addressed on cross-examination" (*Matter of Nicole V.*, 71 NY2d 112, 122 [1987]). However, the fact that such testimony is admissible in the first instance does not divest the court of its fact-finding authority to accept or reject the expert's opinions (*see Matter of Erinn G.*, 249 AD2d 879, 880-881 [1998]).

In a careful analysis of the therapists' testimony, Family Court noted that because their goals were therapeutic rather than forensic, neither expert followed interviewing protocols designed to avoid tainting or influencing the child's testimony.[2] Moreover, the court found that both therapists proceeded from the as-

---

2. In this respect, we note our concern about Family Court's discussion of its views on the appropriate protocols to be followed in interviewing sexual abuse victims, which included appending a copy of John Yuille's Guidelines for Interviewing Children to its decision. No information on these protocols was offered at trial, through expert testimony or otherwise. However, petitioner does not object on appeal to this aspect of the court's determination; moreover, the referenced techniques are widely accepted (*see e.g. Matter of Richard SS.*, 29 AD3d 1118, 1123 [2006]; *Matter of Jared XX.*, 276 AD2d at 982; *Matter of Kelly F.*, 206 AD2d 227, 230-231 [1994, Mikoll, J., dissenting]). Further, we find that any error the court may have committed by relying on this information is rendered harmless by the presence of record evidence supporting its conclusions.

sumption that the father had sexually abused the child, and neither attempted to formulate any other working hypothesis. Finally, the court found that the mother had a distorting influence on what took place during the sessions in that she was present at most or all of them and she provided all of the history and descriptions of the child's behavior from which the therapists worked. The therapists did not seek history or information from anyone else, including respondent; one never met with respondent at all, while the other met with him in only one session, which was cut short when he became upset. According the appropriate deference to the trial court's opportunity to see and hear the witnesses, and taking into account all the circumstances, including the mother's influence and the court's assessment of her credibility, the child's age, and the absence of physical evidence of abuse, an objective validator's assessment or other strong corroboration, we do not find that the court abused its "considerable discretion" (*Matter of Kelly F.*, 206 AD2d 227, 228 [1994]) in concluding that the corroborative evidence was insufficient (*compare Matter of Jared XX.*, 276 AD2d at 982).

Peters, J.P., Rose, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.