■ In the Matter of LEE-ANN W. and Another, Alleged to be Abused and/or Neglected Children. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Respondent; JAMES U., Appellant. [54 NYS3d 769]—

Garry, J.P. Appeal from an order of the Family Court of Sullivan County (McGuire, J.), entered July 24, 2014, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and/or neglected.

Respondent (hereinafter the father) is the father of a daughter (born in 2008) and a son (born in 2012). The relationship between the father and the children's mother began to deteriorate before the son's birth and, in March 2013, the mother left with the children for a trip to Puerto Rico.[1] According to the father, the trip was supposed to last just one week. The mother extended her stay, and the father made two trips to Puerto Rico; in May 2013, after it became apparent that their difficulties could not be resolved, he commenced a proceeding seeking custody of the children. According to the mother, she left for Puerto Rico believing that she and the father had previously reached a verbal agreement permitting her to have custody of the children in Puerto Rico with the understanding that he would have visitation—either there or at one of the father's properties in Florida—and that no formal legal proceeding would be necessary. On the day after the mother was served with the father's custody petition in Puerto Rico, she took the daughter, then 4½ years old, to two local police stations, alleging that the father had been sexually abusing the child.[2]

After Family Court ordered her to do so, the mother returned to New York. She then filed a hotline report, which prompted the commencement of this abuse and neglect proceeding. She also cross-petitioned for custody and filed a family offense petition against the father. The subject petitions were joined, and, following a hearing on various dates between July 2013 and November 2013, the court found that petitioner had made out a prima facie case of abuse and/or neglect. A fact-finding hearing was then conducted on all of the petitions; the testimony from the prior hearings was incorporated therein and additional witnesses were called, including a psychologist who evaluated the children, the father and the mother. Following the hearing, Family Court issued a bench decision, which was subsequently reduced to a written order. As pertinent here, this order granted petitioner's application, finding that the father had abused and neglected the daughter and, in so doing, had derivatively neglected the son. Family Court then con-

1. The marital status of the mother and the father is unclear. According to the mother, the two were married in Honduras, but the marriage was not "certified" and, hence, is not recognized in the United States. The father provided inconsistent information on this point.

2. It appears that the mother also commenced some sort of custody proceeding in Puerto Rico, but that the proceeding was dismissed for lack of jurisdiction.

ducted a dispositional hearing, and the father appeals from the resulting order.[3]

The father and the attorney for the children contend that Family Court's determination that the father abused and/or neglected the children is not supported by a sound and substantial basis in the record. Specifically, they argue that the daughter's statements regarding the sexual abuse allegedly perpetrated by the father were not sufficiently corroborated. Pursuant to Family Ct Act § 1046 (a) (vi), "previous statements made by [a] child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect" (*see Matter of Stephanie RR. [Sullivan County Dept. of Social Servs.—Pedro RR.]*, 140 AD3d 1237, 1238 [2016]; *Matter of Dezarae T. [Lee V.]*, 110 AD3d 1396, 1397 [2013]). Here, a State Police investigator testified that the daughter, using her own vocabulary, said that the father bathed with her while both of them were naked, and that during the baths the father would sometimes sit her on his lap, causing his penis to touch her "butt." The investigator further stated that the daughter said that the father put his finger on her vagina and "butt," washed her vagina using his hand and soap and, finally, that the father placed her on a bed, spread her legs, smelled her vagina and put his nose on it.[4] Similar testimony was offered by the daughter's counselor, who testified that, when she first met the daughter in September 2013, the daughter spontaneously stated, "My father touched my private parts." One of petitioner's caseworkers, who was present for the investigator's interview with the daughter, also testified that the daughter said that the father walked around the house "without any clothes on."

The mother testified that she witnessed the father and the daughter bathing together naked in the tub on numerous occasions, but that she never saw him place the child on his lap.

---

**3.** In a separate order, Family Court disposed of the remaining petitions and, among other things, awarded sole legal and physical custody of the children to the mother, sustained the mother's family offense petition, established a supervised visitation schedule for the father and precluded the mother from traveling with the children outside of the continental United States without the father's permission. The mother has appealed from that order (*Matter of James U. v Catalina V.*, 151 AD3d 1285 [2017] [decided herewith]).

**4.** Although the word "vagina" was used by counsel and various witnesses throughout the trial, it is apparent that they are often referencing the daughter's vulva or external genitalia; any contact with the vagina would necessarily require penetration.

She said that she asked the father to stop bathing with the child, but that he did not do so until after his sister instructed him to stop. The mother further stated that she often saw the father's hands come into contact with the daughter's genitals and buttocks when he was cleaning the child after she had used the bathroom, but not at any other time. The mother gave inconsistent testimony as to whether she had seen the father touch his nose to the daughter's vagina; when she was first asked if she had ever seen this occur, she responded unequivocally that she had not, but later in the hearing she said that she had seen the father place his nose "right up against" her daughter's vagina on two occasions.

The father admitted to some of the underlying conduct, but asserted that it was nonsexual. He testified that he indeed bathed naked with the daughter, sometimes appeared in front of her without clothes, sniffed her buttocks from a distance following a bowel movement or diaper change to see if she required additional cleaning and, when necessary, cleaned her buttocks with soap and water. The father denied that his penis ever came into contact with any portion of the daughter's anatomy, or that he ever digitally penetrated the daughter's vagina or anus or inappropriately touched her in any fashion. Based upon the foregoing testimony, Family Court found that the father's testimony describing his own conduct provided sufficient corroboration for the daughter's statements and that petitioner thus established sexual abuse and neglect by a preponderance of the evidence.

We agree with Family Court that petitioner met its burden to establish neglect. In this regard, "petitioner bore the burden of demonstrating, by a preponderance of the evidence, that the [daughter's] physical, mental or emotional condition was impaired or was in imminent danger of becoming impaired as a result of [the father's] failure to exercise a minimum degree of care" (*Matter of Choice I. [Warren I.]*, 144 AD3d 1448, 1449 [2016]; *see Matter of Evelyn EE. v Ayesha FF.*, 143 AD3d 1120, 1125 [2016], *lv denied* 28 NY3d 913 [2017]). The father's admissions regarding his conduct in bathing with the daughter, smelling her buttocks and being naked in her presence served to corroborate her statements about this conduct. Family Court wholly rejected the credibility of the father's explanations for his motivations in this behavior, and found that such conduct was improper and damaging to the daughter. According the appropriate deference to the court's opportunity to hear the testimony and observe the mother's and father's demeanor over the many months consumed by the hearings in this mat-

ter, we find that the neglect determination is supported by a sound and substantial basis in the record (*see Matter of A.G.*, 253 AD2d 318, 326 [1999]). We likewise find the requisite record support for the court's determination that the son was derivatively neglected (*see generally Matter of Evelyn EE. v Ayesha FF.*, 143 AD3d at 1125).

We reach a different conclusion, however, as to the adjudication of sexual abuse. The purpose of the requirement that a child's out-of-court statements must be corroborated by some other evidence in order to support a finding of abuse is to establish the reliability of such hearsay statements (*see* Family Ct Act § 1046 [a] [vi]; *Matter of Nicole V.*, 71 NY2d 112, 117-118 [1987]; *Matter of Katrina CC. [Andrew CC.]*, 118 AD3d 1064, 1065 [2014]). A child's mere repetition of an accusation to others, "however consistent and believable, is not sufficient to corroborate [his or her] prior out-of-court statements" (*Matter of Dezarae T. [Lee V.]*, 110 AD3d at 1398; *see Matter of Leighann W. v Thomas X.*, 141 AD3d 876, 878 [2016]; *Matter of Dylynn V. [Bradley W.]*, 136 AD3d 1160, 1162 [2016]; *Matter of Keala XX.*, 217 AD2d 745, 746 [1995]). "The corroboration requirement is not demanding and may be satisfied by any other evidence tending to support the reliability of the child's previous statements" (*Matter of Leighann W. v Thomas X.*, 141 AD3d at 878 [internal quotation marks, brackets and citation omitted]; *see Matter of Destiny C. [Goliath C.]*, 127 AD3d 1510, 1511 [2015], *lvs denied* 25 NY3d 911 [2015]). Nevertheless, "there is a threshold of reliability that the evidence must meet" (*Matter of Zachariah VV.*, 262 AD2d 719, 720 [1999], *lv denied* 94 NY2d 756 [1999]; *accord Matter of Dezarae T. [Lee V.]*, 110 AD3d at 1397). Here, relative to the allegations that the father had sexual contact with the daughter, that threshold was not met.

This Court has found corroboration of a child's out-of-court statements pertaining to sexual abuse in such evidence as medical indications of abuse (*see e.g. Matter of Jessica Y.*, 206 AD2d 598, 600 [1994]), expert validation testimony (*see e.g. Matter of Destiny C. [Goliath C.]*, 127 AD3d at 1511), cross-corroboration by another child's similar statements (*see e.g. Matter of Ian H.*, 42 AD3d 701, 703 [2007], *lv denied* 9 NY3d 814 [2007]), marked changes in a child's behavior (*see e.g. Matter of Tanya T.*, 252 AD2d 677, 678-679 [1998], *lv denied* 92 NY2d 812 [1998]), and sexual behavior or knowledge beyond a child's years (*see e.g. Matter of Destiny UU. [Leon UU.]*, 72 AD3d 1407, 1408 [2010], *lv denied* 15 NY3d 702 [2010]). No such evidence was presented here. Instead, the undisputed testimony of all of the witnesses described the daughter as a

social, highly verbal child with no medical evidence of abuse, no significant behavioral alterations, and no indications of inappropriate sexual knowledge or behavior.

Moreover, not only was there no expert validation testimony, but the psychologist who was the sole expert witness to testify expressed significant concerns about the reliability of the daughter's statements. In particular, he noted the timing of the mother's allegations in that she made no allegations of sexual abuse until the day after she was served with the father's custody petition, as well as inconsistencies in the daughter's memory of the nature and timing of events, the fact that she did not disclose any abuse during her first interview by a trained provider, the fact that she was thereafter questioned repeatedly by multiple interviewers, and the fact that the first interviewers to whom the daughter did later describe abuse did not use the standard practice of recording to ensure that their questioning had not influenced her responses. Based upon research in the field and his professional experience, the psychologist opined that repeated, poorly worded questioning about sexual abuse can alter a child's responses and, indeed, his or her memories in such a way that a child sometimes reports abuse that did not occur in an effort to please the interviewer by providing what the child perceives as the answer the interviewer wishes to hear. He further opined that the daughter was an exceptionally suggestible "people pleaser" who would be vulnerable to such a process. Taking into account all of these factors, the psychologist opined that he could not determine with any reasonable degree of psychological certainty that sexual abuse had or had not taken place, and, further, that such allegations "must be viewed with significant skepticism."

Against this backdrop, in finding sufficient corroboration for the daughter's out-of-court statements, Family Court relied wholly upon the father's account of his own conduct. However, in doing so, the court misapprehended the father's testimony, erroneously asserting in its bench decision that the father had in fact admitted that he digitally penetrated the daughter. Upon review, we find no such admission within the father's testimony. Specifically, at the outset of its discussion of corroboration, Family Court accurately stated that the father had been asked during his direct testimony whether he had ever digitally penetrated the child's vagina or anus, and had responded unequivocally that he had not done so. However, the court then incorrectly stated that the father thereafter contradicted his prior testimony by admitting during rebuttal

testimony that digital penetration had occurred, but only while he was cleaning the child. The court found that this purported admission was materially different from the father's prior testimony and from his statements to the psychologist who evaluated him, and concluded that the father had "molded" his previous claims in an effort to explain the child's statements and minimize his conduct.

In fact, however, the relevant portions of the testimony reveal that during rebuttal, the father was asked a compound question as to whether his fingers might have been *"in or around* [the daughter's] rectal area" (emphasis added). In response, the father testified that the only time this could have occurred was when he was cleaning her after a bowel movement. He then described the process by which he and the mother had sometimes cleaned the daughter after toileting by washing her in a sink. This account included no mention of penetration and was entirely consistent with previous testimony that the father had given describing this activity. The mother's counsel then repeatedly attempted to clarify whether any penetration had occurred during this process, but there were objections to each question, and Family Court sustained each objection on the ground that such questions had already been asked and answered. The father thus did not answer these questions, gave no further testimony on the subject, and never testified that digital penetration had occurred. Family Court's mistaken finding to the contrary thus lacks any basis or support in the record. Notably, this mistaken finding was the sole corroborative evidence that the court relied upon that pertained directly to sexual abuse.

Sexual abuse in the second degree occurs when a person subjects another person who is less than 14 years old to sexual contact (*see* Penal Law § 130.60 [2]). Sexual contact, in turn, is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying [the] sexual desire of either party" (Penal Law § 130.00 [3]). Family Court found that the father had engaged in conduct that would constitute sexual abuse in the second degree in that sexual contact had occurred between the father's hands and the child's vagina or buttocks and between the father's nose and the child's vagina or buttocks. However, in the absence of the father's purported admission that he digitally penetrated the daughter, and in view of his unequivocal denials that he ever did so, or in any other manner touched her inappropriately, nothing in his testimony provides any corroboration for the child's statements pertaining to such sexual contact.

We further find nothing else in the record that provides such corroboration. As previously noted, the mother contradicted herself as to whether she had seen the father contacting the child's genital area with his nose. Family Court neither relied upon nor mentioned this testimony; indeed, the court did not mention any aspect of the mother's testimony in its decision, and made no express finding as to her credibility.[5] This Court, therefore, cannot exercise its usual deference to the trial court in assessing the credibility of the mother's testimony that she witnessed such contact. In view of this fact and the contradictory nature of the testimony, we do not find that it rises to the necessary "threshold of reliability" to corroborate the daughter's statements (*Matter of Zachariah VV.*, 262 AD2d at 720).

As for the mother's other testimony, she denied that she ever witnessed any digital penetration, direct contact between the father's fingers and the daughter's vagina, or inappropriate contact in the bathtub, and she stated that the only times she had seen the father's hands come into contact with the daughter's buttocks and genital area were when he was cleaning her. Although an inference of sexual gratification may be drawn from a person's intimate contact with an unrelated child, "when the challenged conduct is the touching of a child by a parent, the consideration of whether the contact was for sexual gratification must take into account the nature and circumstances of the act, since the same conduct which constitutes an act of sexual abuse by a stranger could be a mere expression of affection on the part of a parent" (*Matter of A.G.*, 253 AD2d at 326; *see generally Matter of Jeshaun R. [Ean R.]*, 85 AD3d 798, 800 [2011]). Neither the mother's testimony nor anything else in the record supports an inference that the father had intimate contact within the meaning of Penal Law § 130.00 (3) with the daughter for the purpose of sexual gratification. We thus find that, with reference to sexual abuse, petitioner did not "satisfy its burden of producing evidence which tended to support the reliability of the [daughter]'s out-of-court statements" (*Matter of Zachariah VV.*, 262 AD2d at 720; *see Matter of Dezarae T. [Lee V.]*, 110 AD3d at 1397-1398; *Matter of Kayla J. [Michael J.]*, 74 AD3d 1665, 1668-1670 [2010]; *see also Matter of Zukowski v Zukowski*, 106 AD3d 1293, 1294-1295 [2013]). Accordingly, and as Family Court's abuse adjudication was based

---

**5.** Family Court did make findings pertaining to the mother's credibility in its subsequent decision following the dispositional hearing; in this regard, the court described the mother as "very calculating" and found "no credibility whatsoever" in certain statements she had made. The court did not, however, make any reference to the specific testimony at issue here.

solely upon its determination that sexual abuse had taken place, that adjudication must be reversed (compare Matter of A.G., 253 AD2d at 326).

Egan Jr., Rose, Devine and Aarons, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as adjudicated Lee-Ann W. to be abused by respondent; petition dismissed to that extent; and, as so modified, affirmed.