Matter of Isabella I. (Ronald I.) (2020 NY Slip Op 01410)





Matter of Isabella I. (Ronald I.)


2020 NY Slip Op 01410


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

527280 527281

[*1]In the Matter of Isabella I., Alleged to be an Abused and/or Neglected Child. Schenectady County Department of Social Services, Respondent; Ronald I., Appellant. (Proceeding No. 1.)
In the Matter of Rachel J., Respondent,
Ronald I., Appellant. (Proceeding No. 2.)

Calendar Date: January 9, 2020

Before: Garry, P.J., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Erin K. Hayner, Saratoga Springs, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Sarah H. Petraccione of counsel), for Schenectady County Department of Social Services, respondent.
Sandra M. Colatosti, Albany, for Rachel J., respondent.
Douglas A. Eldridge, Delmar, attorney for the child.



Pritzker, J.
Appeals (1) from an order of the Family Court of Schenectady County (Powers, J.), entered June 1, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be abused and neglected, and (2) from an order of said court, entered July 9, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner Rachel J. (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2007). Based upon a 2015 order, the father and the mother had joint legal custody of the child with the father having weekend parenting time. In January 2016, the child made certain disclosures regarding sexual abuse by the father, which were thereafter reported to petitioner Schenectady County Department of Social Services (hereinafter DSS). After the matter was reported to DSS, the father voluntarily ceased visitation with the child, which has not resumed. Upon completion of its investigation, DSS filed a Family Ct Act article 10 petition alleging that the child was abused and neglected by the father. Thereafter, while fact-finding was ongoing, the mother filed a custody petition seeking sole legal and primary physical custody of the child. These petitions were heard together, as Family Court conducted a fact-finding hearing on the abuse and neglect petition and, thereafter, a dispositional hearing to determine custody of the child. Thereafter, in June 2018, the court found that the child had been abused by the father. In a separate July 2018 order, the court granted the mother's modification petition, awarding her sole legal and primary physical custody of the child and suspending the father's parenting time. The father appeals. We affirm.
The father contends that the evidence presented at the fact-finding hearing was legally insufficient to support Family Court's finding of abuse. "To establish sexual abuse in a Family Ct Act article 10 proceeding, the petitioner is required to prove by a preponderance of the evidence that the respondent committed or allowed another to commit acts constituting crimes under Penal Law article 130" (Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1140 [2018]; see Family Ct Act §§ 1012 [e] [iii] [A]; 1046 [b] [i]; Matter of Brooke KK. [Paul KK.], 69 AD3d 1059, 1060 [2010]). To meet its burden, DSS offered testimony of the child's second grade teacher, to whom the child initially disclosed that she was afraid of her father and that he had "touched [her] down there underneath [her] underpants" and pointed to her vaginal area. The teacher testified that she made notes of her discussion with the child, which she then gave to the school social worker. The school social worker testified that, after receiving the note, he met with the child, who told him, among other things, that the father had pulled down the child's pants, his own pants and then "put his thing in [her] butt," then clarifying that "his thing" meant "[h]is private part." Also, a DSS child protective caseworker testified that, after receiving a hotline report about the abuse, she conducted a forensic interview of the child. At the interview, the child disclosed two acts of sexual abuse by the father, one of which was similar to that which she disclosed to the school social worker. The child also made a consistent disclosure to a nurse, who provided the child's sexual assault medical evaluation. "These out-of-court statements were admissible but, to serve as the basis for a finding of abuse, [they] required corroboration by any other evidence tending to support their reliability" (Matter of Brooke KK. [Paul KK.], 69 AD3d at 1060 [internal quotations marks and citations omitted]; see Family Ct Act § 1046 [a] [vi]). "The corroboration requirement is not demanding and may be satisfied by any other evidence tending to support the reliability of the child's previous statements[, including] . . . medical indications of abuse, expert validation testimony, cross-corroboration by another child's similar statements, marked changes in a child's behavior, and sexual behavior or knowledge beyond a child's years" (Matter of Lee-Ann W. [James U.], 151 AD3d 1288, 1292 [2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 908 [2018]).
To that end, Nicole Muller, a social worker at Northeast Parent and Child Society's sexual abuse program, was validated as an expert without objection and testified in detail regarding two interviews that she had conducted with the child. Muller explained that, to validate a statement of abuse made by a child, five evaluation criteria must be met. In this instance, the statements made by the child did not fully meet two of the required criteria, "sufficient detail" and "contextual embedding," because the child was unable to give sufficient detail regarding the actual sexual interaction and was unable to place the sexual abuse in time. Muller, testified, however, that, given the amount of time that had elapsed between the initial allegations and her interviews, the child's ability to give details may have been impacted. Muller also noted that the child's low IQ and difficulty with oral comprehension could have impacted the interview. Muller also testified that, during the two interviews, there were not any inconsistencies between the child's disclosures. Finally, in Muller's report, which was admitted into evidence, she discussed the child's affect during the interview, concluding that "some aspects of [the child's] presentation could be consistent with children who are known to have been sexually victimized." Similarly, multiple witnesses talked about the child's demeanor while reporting the abuse, as well as changes in her behavior before and after she made the disclosures. Notably, the mother testified regarding marked changes in the child's behavior in the months prior to her initial disclosure.
Given this proof, we find that there is a sound and substantial basis in the record for concluding that DSS met its initial burden of demonstrating that the father abused the child. Although the unsworn statements of the child made to the various witnesses was statutorily insufficient absent additional corroborating proof establishing their reliability (see Family Ct Act § 1046 [a] [vi]; Matter of Jakob Z. [Matthew Z.—Mare AA.], 156 AD3d 1170, 1171 [2017]), this relatively low evidentiary threshold was satisfied by Muller's expert conclusions, including that the child's conduct was consistent with behavior typically exhibited by victims of sexual abuse (see Matter of Makayla I. [Caleb K.], 162 AD3d at 1142; Matter of Nikita W. [Michael W.], 77 AD3d 1209, 1210 [2010]) and testimony of various witnesses regarding the changes in the child's behavior (see Matter of Lori DD. v Shawn EE., 100 AD3d 1305, 1306 [2012]). Further, although "the mere repetition of an accusation does not, by itself provide sufficient corroboration, 'some degree of corroboration can be found in the consistency of the out-of-court repetitions'" (Matter of Cory O. v Katie P., 162 AD3d 1136, 1137 [2018], quoting Matter of Joshua UU. [Jessica XX.—Eugene LL.], 81 AD3d 1096, 1098 [2011]). Moreover, we do not find that any discrepancies in the child's out-of-court statements as to time, place and manner negate the sound and substantial basis of Family Court's findings (see generally Matter of Makayla I. [Caleb K.], 162 AD3d at 1142; Matter of Miranda HH. [Thomas HH.], 80 AD3d 896, 898—899 [2011]). Lastly, Family Court was permitted to draw a negative inference from the failure of the father to appear for DNA testing, which he requested be conducted to compare his DNA to that found in the child's underwear (see Matter of Makayla I. [Caleb K.], 162 AD3d at 1142; Matter of William KK. [Samantha LL.], 146 AD3d 1052, 1054 [2017]).
Finally, the father's contentions relative to the July 2018 custody order are without merit. Initially, contrary to the mother's contention, because the father's counsel appeared, offered an explanation for the father's absence and made legal arguments on the father's behalf, the father was not in default and the order is therefore appealable (see Matter of Linger v Linger, 150 AD3d 1444, 1445 [2017]). Despite the father not being present when Family Court decided the mother's custody modification petition, the court informed him at the time that he was arraigned on the petition that the abuse/neglect and the custody modification petitions would be heard together. It is clear from the record that the father was present for the entirety of the fact-finding hearing, and no further evidence was taken at the dispositional/custody hearing. Additionally, his attorney was present and opposed the mother's custody petition. Given this set of facts, we fail to discern how the father's rights were violated by the court proceeding in his absence (compare Matter of Schroll v Wright, 135 AD3d 1028, 1029-1030 [2016]). Further, based upon Family Court's finding of abuse by the father, which is supported by a sound and substantial basis in the record, there has been a change in circumstances warranting a best interests analysis (see Matter of Mariah K. [Rachel K.—Jay L.], 165 AD3d 1379, 1381 [2018]). As it would therefore clearly not be in the child's best interests to be in the custody of the father, Family Court's grant of primary physical and sole legal custody to the mother is supported by a sound and substantial basis in the record (see Matter of Makayla I. [Caleb K.], 162 AD3d at 1142-1143).
Garry, P.J., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, without costs.