Matter of Cailynn O. (Vincenzo Q.) (2021 NY Slip Op 01813)





Matter of Cailynn O. (Vincenzo Q.)


2021 NY Slip Op 01813


Decided on March 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 25, 2021

527312

[*1]In the Matter of Cailynn O. and Others, Alleged to be Abused and Neglected Children. Schenectady County Department of Social Services, Respondent; Vincenzo Q., Appellant.

Calendar Date: February 5, 2021

Before: Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Matthew C. Hug, Albany, for appellant.
Schenectady County Department of Social Services, Schenectady (Michael R. Godlewski of counsel), for respondent.
Alexandra G. Verrigni, Rexford, attorney for the children.



Pritzker, J.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered July 3, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and neglected.
Respondent is the father of three children, a daughter (born in 2007, hereinafter the oldest child), and two sons (born in 2009 and 2010, hereinafter the older son and the younger son, respectively). Casey O. (hereinafter the mother) is the mother of respondent's children and was, for a time, his paramour. The mother also has a daughter from a different relationship (born in 2012, hereinafter the youngest child), for whom respondent served as a "parent substitute." In June 2017, petitioner filed a petition alleging that respondent had abused and neglected the children. After a fact-finding hearing, Family Court found that petitioner proved by a preponderance of the evidence that respondent sexually abused the youngest child, derivatively abused the other three children and neglected all four children. At a dispositional hearing in September 2018, respondent consented to an order barring his contact with the children and requiring his participation in a sexual offender evaluation and an order of supervision. Respondent appeals from the July 2018 order.
Respondent contends that there is no sound and substantial basis in the record to support Family Court's abuse, derivative abuse and neglect findings. Specifically, he argues that the youngest child's out-of-court statements were not sufficiently corroborated. "Petitioner bore the burden of establishing by a preponderance of the evidence that respondent abused and neglected the children" (Matter of Dylan R. [Jeremy T.], 137 AD3d 1492, 1493 [2016] [citation omitted], lv denied 27 NY3d 912 [2016]; accord Matter of Lawson O. [Andrew O.], 176 AD3d 1320, 1321 [2019], lv denied 35 NY3d 902 [2020]). With respect to the allegations of abuse, petitioner was required to prove that respondent's acts constituted a crime under Penal Law article 130 (see Family Ct Act § 1012 [e] [iii] [A]). Where an allegation of abuse is predicated on a child's out-of-court statements, corroborative evidence is required to render them admissible, although a relatively low level of corroboration will suffice (see Matter of Isabella I. [Ronald I.], 180 AD3d 1259, 1261 [2020]; Matter of Lee-Ann W. [James U.], 151 AD3d 1288, 1292 [2017], lv denied 31 NY3d 908 [2018]). Additionally, where a finding of abuse demonstrates a respondent's "impaired level of parental judgment" that puts any child in that person's care at risk, a derivative finding is appropriate (Matter of Branden P. [Corey P.], 90 AD3d 1186, 1189 [2011] [internal quotation marks and citations omitted]; see Matter of Kylee R. [David R.], 154 AD3d 1089, 1090-1091 [2017], lv denied 30 NY3d 911 [2018]). Furthermore, "[t]o establish neglect, a petitioner must demonstrate, by a preponderance of the evidence, that [*2]the child[ren's] physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired due to the failure of the parent or caretaker to exercise a minimum degree of care" (Matter of Diane C. v Richard B., 119 AD3d 1091, 1093 [2014] [internal quotation marks and citation omitted]; see Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]; Nicholson v Scoppetta, 3 NY3d 357, 368-369 [2004]).
At trial, the mother testified that the youngest child presented with chronic urinary tract infections from July 2016 to January 2017, during which time the youngest child also expressed suicidal ideation and that she had a secret she could not share. The mother testified that, after the infections became chronic, the youngest child's doctor began to do further testing, which the mother discussed with respondent. After the testing began, the infections stopped occurring. The mother alleged that respondent on one occasion persistently asked the youngest child to go to bed with him, and that the youngest child appeared afraid. The mother also testified that she was unemployed and that they had purchased food using food stamps, but, when that ended, respondent would purchase food, but "not too much," and when that "ran out, it ran out." The mother said that respondent purchased alcohol and drank 6 to 12 beers each night in the children's presence.
A supervisor with Child Protective Services testified that, after receiving a hotline report regarding allegations of abuse, she conducted a home visit to respondent's residence. During that visit, the supervisor observed that there was not an appropriate amount of food in the home despite evidence of means and the presence of alcohol. The supervisor testified that she conducted forensic interviews of the children and that, during the first of four interviews of the youngest child, the youngest child told the supervisor that she had secrets that she could not share. The youngest child also said that respondent's hands were mean and that she did not like kissing him. Based upon these statements, a second interview was conducted by the supervisor, during which the child was "evasive," especially when the topic of sexual abuse was broached, and frequently changed the subject. The youngest child did, however, draw a picture of a male and female, and, between the male's legs, she drew a line that she identified as "a peepee." She also differentiated between an adult male and a male child by adding "squiggly marks" to the adult male, which the youngest child identified as hair. In a subsequent interview, the youngest child drew another drawing in which she depicted herself with her arm on respondent's penis. The youngest child drew other pictures depicting respondent touching his penis while touching the youngest child's vagina. The youngest child also drew a line from respondent's penis to her mouth and she described "slimy things" that came out of respondent's penis, which the youngest [*3]child stated she licked off and that she liked it. The youngest child also provided the supervisor with details about respondent's penis. The supervisor testified that, based on her experience and training, she did not believe that the youngest child had been coached.
The supervisor also interviewed the other children and testified that the older son disclosed that he knew "the difference between two different things that come out of the penis," one yellow-green and watery, and the other white and thicker than water. The older son also made a disclosure that indicated that he had observed respondent masturbating. The younger son openly discussed private parts with the supervisor and said he observed the older son put a toy in his anus and that, when it was pulled out, the older son bled. The younger son told the supervisor that he saw respondent touch the youngest child and he was able to describe respondent's penis. The younger son also told the supervisor that he would drink beer with respondent and that, one time, he drank so much beer that he got sick and slept in the bathroom.
The supervisor also interviewed the oldest child, who said that the other children touch each other's "butts," which was "a blanket term [the oldest child] was using for all genitalia." The oldest child was "adamant" that nothing happened at home, even when she was not there, but the supervisor noted that this child is older and, as such, may carry more guilt and shame than the other children. A licensed mental health counselor, who was appointed by the court, completed an assessment of the children to validate the allegations of abuse. The counselor testified at length regarding the tools and methodology employed in completing her assessment. She also testified to the specifics of the interviews and testing that she conducted with each child and the mother. The counselor testified that the youngest child did not make any disclosures to her and that some of the assessments of the youngest child were invalidated, which the counselor attributed to the mother's overreporting. Ultimately, the counselor testified that the results of her assessments indicated that the youngest child had been exposed to sexual abuse or materials and needed therapy, and she opined that all of the children had been similarly abused or exposed.
Respondent called a detective from the Rotterdam Police Department to testify. The detective became involved with respondent's case after the hotline report and initially went to the residence to check on the children's safety. The detective testified that the home was in "good order" and that she assisted in transporting the children to be interviewed regarding the allegations in the report. The detective observed the interviews and her testimony largely corroborated that of the supervisor. The detective also testified that she interviewed respondent and that he laughed throughout the interview. He said that the youngest child would [*4]climb into bed with the mother and respondent after they had been drinking. Respondent denied that the older son had seen him ejaculate and denied having sexual contact with the youngest child, alleging that perhaps the youngest child was coached by the mother as he and the mother had been having relationship difficulties. Respondent did admit to allowing the younger son to take a few sips of beer, which respondent was allowed to do as a young child. The detective testified that there was no physical corroboration of any of the allegations and that she closed her investigation without criminal charges.
There is a sound and substantial basis in the record supporting Family Court's abuse, derivative abuse and neglect findings. Here, the youngest child — who was about four or five years old at the time of the alleged incidents and interviews — made statements that were corroborated by one of the other children, and she possessed age-inappropriate sexual knowledge as evinced by her drawings (see Matter of Lee-Ann W. [James U.], 151 AD3d at 1292; Matter of Destiny UU. [Leon UU.], 72 AD3d 1407, 1408 [2010], lv denied 15 NY3d 702 [2010]; Matter of Ian H., 42 AD3d 701, 703 [2007], lv denied 9 NY3d 814 [2007]). Although some of the assessments completed by the counselor were invalidated based on the mother's overreporting, the counselor did opine that the youngest child had likely been exposed to sexual abuse or material (see Matter of Destiny C. [Goliath C.], 127 AD3d 1510, 1511 [2015], lvs denied 25 NY3d 911 [2015]). Mindful of the deference afforded to Family Court's fact-finding and credibility assessment and the minimal amount of corroboration required to admit the youngest child's statements, there was a sound and substantial basis in the record for Family Court's finding that respondent sexually abused the youngest child (see Matter of Isabella I. [Ronald I.], 180 AD3d at 1262; Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1142 [2018]).
Moreover, the three other children's age-inappropriate sexual knowledge and the younger son's apparent awareness of respondent touching the youngest child form a sound and substantial record basis to support Family Court's finding that respondent's abuse of the youngest child constituted derivative abuse of the other children because such proof demonstrated that respondent's impaired parenting placed the other children at risk (see Matter of Kylee R. [David R.], 154 AD3d at 1090-1091; Matter of Branden P. [Corey P.], 90 AD3d at 1189). Furthermore, as to the neglect finding, not only did Family Court credit the CPS supervisor's testimony that there was inadequate food in the family's residence during her visit, but the mother also testified that respondent did not purchase enough food. This evidence, as well as testimony that respondent allowed the younger son to consume alcohol and respondent's abuse of the youngest child, provide sound and substantial support for Family Court's finding that respondent exhibited [*5]substandard parental care that endangered the physical, mental or emotional development of the children who were thereby neglected (see Matter of Diane C. v Richard B., 119 AD3d at 1093; Matter of Josephine BB. [Rosetta BB.], 114 AD3d 1096, 1097 [2014]).
Respondent also argues that Family Court abused its discretion in drawing a negative inference from his failure to testify as he had already fully set out his case through the detective, that he had cooperated in the investigation and that he was not criminally charged. However, since respondent was given the opportunity to testify and chose not to do so, Family Court was permitted to draw the strongest inference against him as the evidence would permit (see Matter of Makayla I. [Caleb K.], 162 AD3d at 1142). Respondent's remaining contention has been examined and found to be lacking in merit.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.