Matter of Annaleigh X. (Ashley Y.) (2022 NY Slip Op 03039)





Matter of Annaleigh X. (Ashley Y.)


2022 NY Slip Op 03039


Decided on May 5, 2022


Appellate Division, Third Department




Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 5, 2022

533505
[*1]In the Matter of Annaleigh X., Alleged to be a Neglected Child. Ulster County Department of Social Services, Respondent; Ashley Y., Appellant. (And Another Related Proceeding.)

Calendar Date:March 21, 2022

Before:Garry, P.J., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Constantina Hart, Kauneonga Lake, for appellant.
Ulster County Department of Social Services, Kingston (Michael Collado of counsel), for respondent.
Claudia S. Davenport, Kingston, attorney for the child.



Fisher, J.
Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered June 7, 2021, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent Ashley Y. (hereinafter the mother) is the mother of the subject child (born in 2014). In March 2019, the mother was arrested for drug sales and subsequently incarcerated in April 2019. Between the time of the mother's arrest and commitment, the mother supported the guardianship petition of her friend, respondent Koryntha Z. (hereinafter the friend), who sought to be the child's guardian on the basis that both of the child's parents were incarcerated and the child already resided with her. The friend attached to the petition a handwritten note signed by the mother giving the friend "temporary guardianship" of the child while the mother was incarcerated. In July 2019, Family Court granted the friend's application and appointed her the guardian of the child. In June 2020, after the mother was released from jail, she had a telephone conversation with the child during which the child stated that the friend was "doing some bad things" in "her arm and her leg" and "giving herself a shot," which, according to the mother, was in reference to the friend "doing heroin." The mother reported this to petitioner and then commenced a proceeding seeking revocation of the guardianship. Pursuant to an order entered on consent, Family Court revoked the letters and order of guardianship.
Petitioner then filed a prepetition application for temporary removal of the child (see Family Ct Act § 1022), which was granted upon consent and the child was then placed in petitioner's custody. Shortly thereafter, petitioner commenced the two instant neglect proceedings — one against the mother and one against the friend. Following a joint fact-finding hearing in April 2021, Family Court granted both petitions. As relevant here, Family Court found that the mother had placed the child "in imminent danger of harm by consenting to the guardianship of [the friend], an individual known to her to be a user of illegal drugs." The mother appeals.[FN1]
"Neglect is established when a preponderance of the evidence shows that the [child's] physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the [child] results from the respondent's failure to exercise a minimum degree of care in providing the [child] with proper supervision or guardianship" (Matter of Jaxxon WW. [Donald XX.], 200 AD3d 1522, 1523 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Aiden LL. [Tonia C.], 191 AD3d 1213, 1213 [2021]). "In determining whether a parent has failed to exercise a minimum degree of care, the dispositive inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter [*2]of Lexie CC. [Liane CC.], 190 AD3d 1165, 1165 [2021] [internal quotations marks, brackets and citations omitted]; see Matter of Jarrett SS. [Jade TT.—Scott SS.], 183 AD3d 1031, 1032 [2020]). "It is well established that a child may be adjudicated to be neglected when a parent or caretaker knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child and failed to act accordingly" (Matter of Crystiana M. [Crystal M.—Pamela J.], 129 AD3d 1536, 1537 [2015] [internal quotations marks and citations omitted]; see Matter of Boryana D. [Victoria D.], 157 AD3d 1011, 1012 [2018]). "We accord great deference to Family Court's findings and credibility determinations and we will not disturb them, unless they are unsupported by a sound and substantial basis in the record" (Matter of Jaxxon WW. [Donald XX], 200 AD3d at 1523 [internal quotation marks and citation omitted]; see Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 748 [2021], lv denied 37 NY3d 915 [2021]).
At the fact-finding hearing, petitioner presented the testimony of a caseworker who became involved with the case in June 2020 after receiving a report raising concerns that the friend might be using drugs in the presence of the child. The caseworker testified that she had a conversation with the mother who reported that the child told the mother that the friend "had been doing some bad things" and proceeded to demonstrate what the friend had been doing by putting a phone cord around her arm and making motions that appeared to imitate giving herself a shot. The caseworker went to the friend's home the same day to conduct an interview. Although the friend denied the allegations that she was using drugs, she admitted to being arrested for using heroin in 2015, completed two drug rehabilitation and treatment programs in 2016 and 2017, but was later arrested in 2017 for possession of marihuana and disorderly conduct. Based on this information, the caseworker requested that the friend undergo two separate drug tests a few days apart; the friend tested positive for fentanyl both times, without a prescription for same. The caseworker testified that it was her understanding that the friend completed probation in June 2020 for her initial heroin offense.
Thereafter, the caseworker met with the friend again and notified her of the positive drug tests. The friend disclosed that she had a relapse near the end of 2018 and beginning of 2019, stating that she "was getting high with [the mother] up until [the mother] went to jail" in April 2019.[FN2] The friend further indicated that, during this time period of getting high in 2018 to 2019, she had been "very close" with the mother. The friend did not specify how frequently the two got "high" and did not identify what type of drugs they were using. Neither the friend nor the mother testified, although the mother was present for the hearing.
We find a sound and substantial basis in the record [*3]supporting Family Court's finding of neglect against the mother. Although the record reflects that the mother promptly contacted petitioner and sought termination of the friend's guardianship when she suspected the friend was using heroin, the record also reflects that the mother failed to act as a reasonable and prudent parent would have so acted under the circumstances by consenting to the guardianship of the friend in April 2019 (see Matter of Lexie CC. [Liane CC.], 190 AD3d at 1165; Matter of Jarrett SS. [Jade TT.- Scott SS.], 183 AD3d at 1032; see also Matter of Wyatt YY. [Melissa OO.], 118 AD3d 1061, 1062 [2014]). The evidence at the fact-finding hearing established that the friend was on probation for a heroin use offense and had "relapse[d]" in late 2018 and into early 2019. During her time of relapse, the friend admitted she would get "high" with the mother until the mother went to jail in April 2019. While the mother challenges these contentions on appeal, particularly as to what she knew about the friend's drug use at the time she consented to the guardianship, the friend also indicated to the caseworker that she was "very close" to the mother, which is reflected in the guardianship application where the friend is listed as an "aunt/godmother" to the child. In considering these facts, Family Court was entitled to, and did, "draw the strongest inference" against the mother by virtue of her failure to testify to rebut any of the friend's statements (Matter of Cailynn O. [Vincenzo Q.], 192 AD3d 1408, 1413 [2021]; see Matter of Dashawn W. [Antoine N.], 21 NY3d 36, 44 [2013]). Accordingly, we decline to disturb the finding of neglect.
To the extent that the mother challenges the continued placement of the child in the custody of petitioner, the record reflects that the dispositional order placing the child in the custody of petitioner was entered on consent. The mother did not appeal from this order and, in any event, "no appeal lies from an order issued on consent" (Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1082 n 1 [2015]).
Garry, P.J., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The notice of appeal states that the appeal is being taken from the "decision and order" of Family Court entered on May 14, 2021. However, a review of the record establishes that this is in reference to Family Court's "decision on fact-finding," which preceded the June 2021 fact-finding order. The table of contents and the CPLR 5531 statement also confirm the mother's intent to appeal the decision. Although no appeal lies from a decision — as it is a nonappealable paper — we exercise our discretion to deem the appeal as having been taken from the June 2021 order of fact-finding (see CPLR 5512 [a]; Travis A. v Vilma B., 197 AD3d 1401, 1402 n 1 [2021]).

Footnote 2: Family Court barred the caseworker from testifying as to the substance of her conversations with either the friend or the mother after they were assigned counsel. Notwithstanding, petitioner was able to have the caseworker testify as to several conversations she had with the friend before the assignment of counsel.