Matter of Jahkell SS. (Victoria SS.) (2025 NY Slip Op 02376)

Matter of Jahkell SS. (Victoria SS.)

2025 NY Slip Op 02376

Decided on April 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 24, 2025

CV-23-0652
[*1]In the Matter of Jahkell SS. and Others, Alleged to be Neglected Children. Schenectady County Department of Social Services, Respondent; Victoria SS., Appellant.

Calendar Date:February 11, 2025

Before:Garry, P.J., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Michelle I. Rosien, Philmont, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Dylan J. Reilly of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the children.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Schenectady County (Mark Blanchfield, J.), entered February 9, 2023, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent (hereinafter the mother) is the mother of the five subject children (born in 2006, 2009, 2010, 2012 and 2015). In September 2021, Child Protective Services received a telephone call from the Schenectady Police Department advising that they had picked up the second oldest child (hereinafter the child) after he was found wandering the streets alone, barefoot and in disheveled and torn clothing. When questioned by petitioner's caseworkers, the child relayed that he had been subjected to excessive corporal punishment by the mother and grandmother and, as such, had run away from home. Consequently, the child was protectively removed and placed in foster care. Petitioner thereafter commenced this neglect proceeding alleging that the mother had neglected the children in numerous respects. Following a fact-finding hearing, Family Court ultimately determined that the mother neglected the child by subjecting him to excessive corporal punishment and that such behavior constituted derivative neglect of the other children. The mother appeals.
The mother contends that the child's statements were not sufficiently corroborated and Family Court's findings of neglect and derivative neglect are not supported by a sound and substantial basis in the record. We disagree. "In a neglect proceeding, petitioner bears the burden of establishing, by a preponderance of the evidence, that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the parent's failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship" (Matter of Joshua R. [Kimberly R.], 216 AD3d 1219, 1220 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 905 [2023]; see Matter of Damiek TT. [Damiek UU.], 232 AD3d 1157, 1157 [3d Dept 2024]). "A finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance" (Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d 1031, 1032 [3d Dept 2020] [internal quotation marks and citations omitted; emphasis added]; see Matter of Messiah RR. [Christina RR.], 190 AD3d 1055, 1057 [3d Dept 2021]). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1077 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 912 [2022]; see Matter of Asiah S. [Nancy [*2]S.], 212 AD3d 1062, 1063 [3d Dept 2023], lv denied 39 NY3d 913 [2023]).
Moreover, a child's prior out-of-court statements relating to the alleged neglect may serve as the basis for a finding of neglect, if sufficiently corroborated by any other evidence tending to support their reliability (see Matter of Lily BB. [Stephen BB.], 191 AD3d 1126, 1127 [3d Dept 2021], lv dismissed 37 NY3d 927 [2021]; Matter of Isabella I. [Ronald I.], 180 AD3d 1259, 1261 [3d Dept 2020]). "A relatively low degree of corroborative evidence is sufficient to meet this threshold" (Matter of Lily BB. [Stephen BB.], 191 AD3d at 1127 [internal quotation marks and citations omitted]; see Matter of Stephanie RR. [Pedro RR.], 140 AD3d 1237, 1238 [3d Dept 2016]). "[T]he reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court" (Matter of Olivia RR. [Paul RR.], 207 AD3d 822, 824 [3d Dept 2022] [internal quotation marks and citation omitted]; see Matter of Kristina S. [Michael S.], 160 AD3d 1057, 1058 [3d Dept 2018]).
The evidence presented by petitioner at the fact-finding hearing consisted of testimony from a family support unit caseworker and the mother. The caseworker testified that Child Protective Services was initially contactedby the Schenectady Police Department regarding concerns for the safety of the child, and her initial concern was inadequate guardianship as the developmentally delayed child had been wandering the streets without adult supervision for two to three hours before the police were called. Moreover, the child remained at the police station — as the mother had not contacted the police looking for the child — until at least 9:30 p.m., when Child Protective Services were contacted.[FN1] However, when the caseworker and her coworker interviewed the child, he reported that he had fled his home because the mother slapped him on his left cheek, and his grandmother got on top of him, beat him and ripped his T-shirt.[FN2] He further stated that his siblings were at the residence during the incident. The child eventually ran out of the house, wearing only shorts and the ripped T-shirt.[FN3] The caseworker relayed that the child appeared distraught, spoke rapidly when describing the incident and several times buried his face in his hands. The child stated that he was afraid to go back home because the mother and grandmother were frequently mean to him, and he believed that the mother would "whoop" him. After speaking with him, the caseworker was convinced that the child, who has developmental disabilities, was targeted, not only by the mother and grandmother, but also by his siblings. Based on the caseworker's concerns, the child was protectively removed and placed in foster care. Initially, while in foster care, the caseworker transported the child to and from school. It was during these trips that the child confided to her that he was often "beat" by the mother and grandmother, including, on occasion, being [*3]beaten with both a stick and a belt, and that he had run away before.The caseworker testified that a few days after the child's removal, she spoke to the mother, who admitted that she said in the presence of the police that she "was going to whoop [the child's] a** when he [comes] home."[FN4]
The mother testified to her family's composition and her own mental health treatment since approximately 2015; however, she refused to answer any questions pertaining to the September 2021 incident involving the child. Additionally, several of the child's out-of-court statements and the mother's statement that "[the child] left at 3 p.m. and when you bring him out here I'm going to beat his a**" were contained in the police reports that were admitted into evidence.
A review of the record reveals corroboration of the child's statements from a variety of sources, including the mother's assertions that upon the police releasing the child to her, she would subject the child to excessive corporal punishment (see Matter of Jaivon J. [Patricia D.], 148 AD3d 890, 892 [2d Dept 2017]; Matter of Michael W., 263 AD2d 684, 685 [3d Dept 1999]). Additionally, the child's consistent out-of-court descriptions of excessive corporal punishment, along with the child's affect and demeanor while making the statements, provide some degree of corroboration (see Matter of Lily BB. [Stephen BB.], 191 AD3d at 1128; Matter of Isabella I. [Ronald I.], 180 AD3d at 1262). Furthermore, it is well settled that Family Court was permitted to draw the strongest negative inference from the mother's choice not to answer questions concerning the incident although given the opportunity to do so (see Matter of Cailynn O. [Vincenzo Q.], 192 AD3d 1408, 1413 [3d Dept 2021]; Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1142 [3d Dept 2018]). Given this proof, notably that "even a single incident of excessive corporal punishment can support a finding of neglect and actual physical injury . . . is not required" (Matter of Bianca QQ. [Kiyonna SS.], 75 AD3d 679, 681 [3d Dept 2010] [internal citation omitted]; see Matter of Bryce Y. [Clint Y.], 200 AD3d 1129, 1130 [3d Dept 2021], lv dismissed 38 NY3d 1019 [2022]), and according deference to Family Court's assessment of credibility, we are satisfied that a sound and substantial basis exists for the court's determination that the mother neglected the child (see Matter of Damiek TT. [Damiek UU.], 232 AD3d at 1159; Matter of Bonnie FF. [Marie VV.], 220 AD3d 1078, 1081-1082 [3d Dept 2023]; Matter of Bryce Y. [Clint Y.], 200 AD3d at 1131).
Lastly, as the mother's behavior toward the child revealed an impaired level of parental judgment, which demonstrates a fundamental flaw in her understanding of her duties of parenthood placing the other children at risk, Family Court properly determined that the mother derivatively neglected her other children (see Matter of Bryce Y. [Clint Y.], 200 AD3d at 1131; Matter of Cailynn O. [Vincenzo Q.], 192 AD3d at 1412-1413; Matter [*4]of Dawn M. [Michael M.], 134 AD3d 1197, 1198 [3d Dept 2015]).
Garry, P.J., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The caseworker testified that she was familiar with the child and his family as she had been working with them since 2017, when another child of the mother was removed and placed in a residential treatment center.
Footnote 2: The child's T-shirt was ripped from the neckline to the bottom, exposing his entire chest.
Footnote 3: The child reported that he was cold and that his bare feet hurt from walking for hours.

Footnote 4: Although the petition specifically references this single incident, Family Court sua sponte conformed the pleadings to reflect that the child was subject to a pattern of violence.