Matter of Jarrett SS. (Jade TT.--Scott SS.) (2020 NY Slip Op 02831)





Matter of Jarrett SS. (Jade TT.--Scott SS.)


2020 NY Slip Op 02831


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

527569

[*1]In the Matter of Jarrett SS. and Another, Alleged to be Neglected Children. St. Lawrence County Department of Social Services, Respondent; Jade TT., Appellant, and Scott SS., Respondent. (And Two Other Related Proceedings.)

Calendar Date: March 25, 2020

Before: Lynch, J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
St. Lawrence County Department of Social Services, Canton (Amanda Calton of counsel), for St. Lawrence County Department of Social Services, respondent.
Noreen McCarthy, Keene Valley, for Scott SS., respondent.
Omshanti Parnes, Plattsburgh, attorney for the children.



Lynch, J.P.
Appeal from an order of the Family Court of St. Lawrence County (Morris, J.), entered July 16, 2018, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent Jade TT. (hereinafter the mother) and respondent Scott SS. (hereinafter the father) are the parents of two children, a son (born in 2014) and a daughter (born in 2015). In May 2017, petitioner filed a neglect petition alleging, among other things, that respondents neglected the children by leaving them unsupervised, knowing that the son had a disability. Thereafter, in June 2017, Family Court entered orders of protection, upon respondents' consent, ordering respondents to refrain from consuming any alcohol, illegal drugs or unprescribed prescription drugs and to submit to drug and alcohol tests as arranged by petitioner. During a fact-finding hearing, the court was notified that the father was in the custody of the Ogdensburg Police Department awaiting arraignment and, as a result, the court adjourned the fact-finding hearing as to the father but continued the hearing as to the mother. Following the fact-finding hearing, in July 2018, the court granted the neglect petition as to the mother finding that she neglected the children by leaving them unsupervised.[FN1] The mother appeals.
The mother contends that Family Court erred in finding that she neglected the children as she merely left them alone for a few minutes.[FN2] "To satisfy its burden on the neglect petition, petitioner had to prove by a preponderance of the evidence that [the mother's] failure to exercise a minimum degree of care in providing proper supervision or guardianship resulted in the child[ren]'s physical, mental or emotional condition being impaired or placed in imminent danger of becoming impaired" (Matter of Thomas XX. [Thomas YY.], 180 AD3d 1175, 1175-1176 [2020] [internal quotation marks and citations omitted]; see Family Ct Act § 1012 [f] [i] [B]; Matter of Aerobella T. [Bartolomeo V.], 170 AD3d 1453, 1453 [2019]). "A finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance" (Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [2017] [citations omitted]; see Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [2019]). "When determining whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Raelene B. [Alex D.], 179 AD3d 1315, 1317 [2020] [internal quotation marks and citations omitted]; see Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d 1287, 1288 [2019], lv denied 34 NY3d 901 [2019]). We accord deference to Family Court's credibility determinations and factual findings if they are supported by a sound and substantial basis in the record (see Matter of Johnathan Q. [James Q.], 166 AD3d 1417, 1418 [2018]).
At the fact-finding hearing, a police officer testified that, on March 30, 2017, he, along with a police sergeant, responded to a call at the mother's house to conduct a welfare check of the children. Upon arrival, the police officer looked through a glass door to the kitchen and living room, which is located on the right of the kitchen, and observed two children alone on the floor, unsupervised, and the daughter was crying. According to the police officer, after knocking heavily on the door and yelling for respondents for a few minutes, the officers entered the residence to ensure the safety of the children. When they entered the house, the officers continued yelling for respondents. The police officer then observed that the daughter "was crawling around [and] the [son] was pulling DVDs or something to [that] effect near the [television]." The police officer further testified that, after "a minute or so," the mother emerged from her bedroom and, appearing disoriented, "stepped right over the [daughter]," who was still crying. The police officer then asked the mother whether she would pick up the daughter, at which point she finally did. According to the police officer, the mother initially stated that the father was watching the children, but that she did not know where he was. The mother then stated that she did not hear the police officers because she "work[ed] nights" and "was sleeping or . . . must have fallen asleep."
A caseworker for petitioner testified that she was an investigator on respondents' case. According to the caseworker, the son suffers from cerebral palsy caused by a traumatic brain injury from difficulties at birth and receives physical therapy and occupational therapy, as well as attends additional medical providers. As to the incident when the police officers came to her house, the mother told the caseworker that she was switching the laundry over for a very short period of time upstairs and that the father went out to get pizza. The caseworker also testified that she asked the mother to submit to a drug test, but the mother refused. The caseworker also testified as to a second incident when the son was left unsupervised. On May 4, 2017, the caseworker made an unannounced visit to respondents' home and observed the father smoking a cigarette outside the house, watching the daughter, while the son was alone in a highchair in the house. The caseworker did not see the mother, as she was "reported to be sleeping" at that time. The caseworker stated that after the mother woke up, she asked the mother to submit to an oral drug test, but the mother refused and informed the caseworker that she would "not be allowed to step foot back in the home" if she asked the mother to submit to a drug test again. However, the caseworker admitted that she lacked the authority to require the mother to submit to a drug test because no court orders were issued requiring the mother to submit to drug testing at that time.
For her part, the mother testified that the son has special needs and cannot walk, feed or dress himself or tell the mother what he wants, so she relies on nonverbal cues and noises that the son makes. The son receives occupational, behavioral, visual and speech therapy, as well as additional medical services. As to the incident in March 2017, the mother testified that she woke up that morning around 11:45 a.m., at which point she and the father ordered a pizza. The mother explained that while she was still in the bedroom, which is on the same floor as the living room, the children were in the living room with the father. About five minutes after ordering the pizza, the father went to get the pizza. The mother further stated that she then went to the laundry room, which is located upstairs and can be accessed through the staircase in her bedroom. The mother admitted that she knew that the children were alone because she heard the father leave. When the police arrived, the mother was in the laundry room. When asked what the children were doing in the kitchen when the mother was in the laundry room, she stated, "they wanted to come up and do laundry with me but . . . at that time I didn't like them going up and down the stairs." The mother testified that, while the son cannot walk, he can crawl and climb. The mother added that she left the children downstairs while she did laundry because the kitchen has a table, but other than that is "[p]retty much all . . . childproofed." However, the mother admitted that the door to the bedroom, which led to the laundry room, was closed and there was a heater and a television, which blocked any noise from downstairs to the laundry room. The mother further explained that she was charged with endangering the welfare of a child after the incident and pleaded guilty to disorderly conduct in satisfaction of that charge.
We find that Family Court's determination that the mother neglected the children is supported by a sound and substantial basis in the record. As to the first incident, the police officers observed the two-year-old daughter crying and crawling on the floor, and the three-year-old son, who has a disability and is not able to care for himself, pulling DVDs or something like that near the television. The mother did not immediately respond to police officers and, when she exited from her bedroom a few minutes later, appeared disoriented, stepped over the crying daughter without picking her up and told the officers that she was or could have fallen asleep. The mother admitted that she knew that the children were left unsupervised and that there was a fan and a television that prevented her from hearing noises from where the children were located. As to the second incident, the caseworker observed the son without supervision in a highchair at the house while the mother was reported sleeping. Although the mother's account of the events differs, we defer to Family Court's credibility determinations (see Matter of Johnathan Q. [James Q.], 166 AD3d at 1418; Matter of Hailey XX. [Angel XX.], 127 AD3d 1266, 1268 [2015]). Although these two events were isolated, in light of the circumstances, including the son's disability, we find that leaving the children unsupervised — even for a brief amount of time — constituted neglect of the children (see Matter of Leah VV. [Theresa WW.], 157 AD3d 1066, 1067 [2018], lv dismissed 31 NY3d 1037 [2018]; Matter of James HH., 234 AD2d 783, 784 [1996]).
Mulvey, Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Petitioner also filed three violation petitions against respondents, in July 2017, October 2017 and May 2018, which Family Court dismissed.

Footnote 2: The father filed a brief also contending that Family Court improperly found that the mother neglected the children. To the extent that the father makes additional evidentiary and due process arguments, they are either improperly raised or without merit.