Matter of Hakeem S. (Sarah U.) (2022 NY Slip Op 04214)

Matter of Hakeem S. (Sarah U.)

2022 NY Slip Op 04214

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

533763
[*1]In the Matter of Hakeem S. and Others, Alleged to be Neglected Children. Schenectady County Department of Social Services, Respondent; Sarah U., Appellant.

Calendar Date:June 2, 2022

Before:Garry, P.J., Egan Jr., Lynch, Reynolds Fitzgerald and McShan, JJ.

Michelle I. Rosien, Philmont, for appellant.
Schenectady County Department of Social Services, Schenectady (Michael R. Godlewski of counsel), for respondent.
Lara P. Barnett, Duanesburg, attorney for the children.

McShan, J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered June 10, 2021, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent is the mother of three children (born in 2010, 2018 and 2019). In July 2019, the children were removed from respondent's care following an incident in the City of Schenectady, Schenectady County. Several days later, petitioner commenced this proceeding alleging, among other things, that respondent neglected the children by excessively consuming alcohol in such a way that caused her to lose consciousness while the children were in her care. After a two-day fact-finding hearing, Family Court granted the petition. Respondent appeals, and we reverse.
In a neglect proceeding, petitioner bears the burden of establishing, by a preponderance of the evidence, "that 'the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the parent's failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship'" (Matter of Aiden J. [Armando K.], 197 AD3d 798, 798-799 [2021], quoting Matter of Jakob Z. [Matthew Z.—Mare AA.], 156 AD3d 1170, 1171 [2017]; see Family Ct Act § 1012 [f] [i] [B]; Matter of Isabella E. [James E.], 195 AD3d 1096, 1098 [2021]). While actual injury or impairment is not necessary, the imminent threat of danger to the children "must be near or impending, not merely possible" (Matter of Josiah P. [Peggy P.], 197 AD3d 1365, 1367 [2021]; see Matter of Messiah RR. [Christina RR.], 190 AD3d 1055, 1057 [2021]). Said differently, the inquiry is focused on the existence of "'serious harm or potential harm to the child[ren], not just on what might be deemed undesirable parental behavior'" (Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [2019], quoting Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; see Matter of Hannah U. [Dennis U.], 97 AD3d 908, 909 [2012]).
Respondent testified at the fact-finding hearing that she and the children were living in a private room in a homeless shelter in Schenectady at the time of the incident. After the children had gone to sleep, respondent went into the bathroom and began drinking a bottle of brandy while talking on the phone with a family member concerning the recent death of her sister. According to respondent, the bathroom was accessible through a small vestibule next to her private room, and she had left the door partially open so she could see the children while they slept. At some point, respondent fell asleep while seated on the toilet in the bathroom. She was later awoken by shelter staff in the early morning hours, and staff contacted an ambulance to respond. The care report from the ambulance service indicated that the responding ambulance crew encountered respondent [*2]in the bathroom and concluded that she was intoxicated. Accordingly, respondent was transported to Ellis Hospital in Schenectady; however, respondent refused any treatment and eventually returned to the shelter. After respondent had left in the ambulance, shelter staff contacted petitioner and spoke with a supervisor, advising her that respondent had been taken to the hospital. The supervisor testified that she personally responded to the shelter and observed the three children in the care of shelter staff. The supervisor was then led to respondent's private room, where she observed a bottle of brandy that had been partially consumed. The supervisor took the children into custody and was eventually contacted by respondent in the afternoon regarding their whereabouts.
According deference to Family Court's findings, as we must, we find that the record contains sufficient evidence establishing that respondent failed to exercise a minimum degree of care when she became intoxicated while the children were under her care and, in effect, left them unsupervised for a brief period (see Matter of Javan W. [Aba W.], 124 AD3d 1091, 1093 [2015], lv denied 26 NY3d 905 [2015]). However, we find that petitioner failed to establish that respondent's ill-advised conduct placed the children at risk of anything beyond, "at most, possible harm" (Matter of Aiden LL. [Tonia C.], 191 AD3d 1213, 1215 [2021]). To this point, respondent testified that her youngest children were in age-appropriate sleeping arrangements that presented no inherent danger resulting from respondent's inebriated state (see Matter of Anna F., 56 AD3d 1197, 1198 [2008]; compare Matter of Johnathan Q. [James Q.], 166 AD3d 1417, 1418 [2018]; Matter of Leah VV. [Theresa WW.], 157 AD3d 1066, 1067 [2018], lv dismissed 31 NY3d 1037 [2018]; Matter of Sasha B. [Erica B.], 73 AD3d 587, 587 [2010], appeal dismissed 16 NY3d 755 [2011]). Further, although there was a period when the children were no longer supervised by respondent when she was taken to the hospital, the testimony reveals that shelter staff were watching the children until petitioner's supervisor arrived and took custody of them, and there is no indication that they were in any danger during this period of time (see Matter of Cadence GG. [Lindsay II.], 124 AD3d 952, 954 [2015]).
Finally, the record is devoid of any proof that the children were upset or suffered any emotional harm at any point during the incident (see Matter of Javan W. [Aba W.], 124 AD3d at 1092; compare Matter of Devon EE. [Evelyn EE.], 125 AD3d 1136, 1137 [2015], lv denied 25 NY3d 904 [2015]). In this respect, the record fails to provide any indication that the children were awake during the entirety of the period that respondent was drinking alcohol and the ensuing period when respondent was asleep in the bathroom across from their private room (see Matter of Javan W. [Aba W.], 124 AD3d at 1093; compare Matter of Nevaeh L. [Katherine L.], 177 AD3d 1400, 1402 [2019[*3]]). Ultimately, despite the various potential witnesses petitioner could have called to shed light on the effect that respondent's conduct had on the children or what, if anything, prompted shelter staff to enter the bathroom to wake respondent, it failed to do so, leaving the record barren as to any danger that the children may have been in or any harm they may have suffered. Thus, "[w]hile respondent's conduct was far from ideal and it is possible to speculate about [the various] ways that events could have turned out differently for the children," petitioner failed to meet its burden to sufficiently put forth evidence establishing that the children were in imminent danger (Matter of Cadence GG. [Lindsay II.], 124 AD3d at 954—955; accord Matter of Jordyn WW. [Tyrell WW.], 176 AD3d at 1349).[FN1] In light of our determination, respondent's remaining contention is rendered academic.
Garry, P.J., Egan Jr. and Reynolds Fitzgerald, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent. I readily agree with the majority's conclusion that respondent failed to exercise a minimum degree of care. We part ways as to whether the children were at imminent risk of harm. In an instance, as here, where the children were not actually harmed, the question is whether the children were "in imminent danger of becoming impaired as a result of the failure of [respondent] . . . to exercise a minimum degree of care" (Family Court Act § 1012 [f] [i]; see Nicholson v Scoppetta, 3 NY3d 357, 368-369 [2004]). In gauging neglect, a court must "focus on serious harm or potential harm to the child[ren], not just on what might be deemed undesirable parental behavior" (Nicholson v Scoppetta, 3 NY3d at 369 [emphasis added]). "Imminent danger, however, must be near or impending, not merely possible" (id.).
By her account, respondent admitted that she fell asleep in the bathroom after drinking a cup of brandy mixed with soda. By comparison, petitioner's caseworker described the bottle of brandy as being only a quarter full. Respondent began to drink around 8:00 p.m. or 9:00 p.m. on the evening of July 19, 2019 and consumed the beverage over the course of two hours while the children were asleep. She estimated that she fell asleep around 1:00 a.m. and was awakened when a shelter staff member tapped her. She explained that both the bathroom door and the bedroom door were halfway open. Respondent conceded that she "had a little buzz" when she fell asleep.
The hospital records, which were certified and received in evidence without objection (see CPLR 2306; 4518 [c]), included a copy of the ambulance report. That report noted that the ambulance crew arrived at the shelter at 2:05 a.m. on July 20, 2019. Also present were Schenectady Fire Department personnel, who indicated that respondent's mental state was confused, her gait abnormal and speech slurred. Respondent was assessed as being "intoxicated with the smell of alcohol on her breath." Upon completing their [*4]assessment, the Fire Department personnel "signaled [respondent] for . . . transport to [the hospital emergency room]." The hospital records show that respondent arrived at 2:35 a.m. but "left without being seen." The triage note described respondent as "very loud[,] [a]mbulating in the waiting room." She was also described as having "a steady gait in the waiting room."
There are several key factors that support Family Court's neglect determination. Of particular import is the tender age of the youngest child, who was less than two months old. By respondent's own account, the bedroom door was open and, with respondent asleep in the bathroom, other occupants at the shelter would have had access to the children's room. Respondent's testimony that she had one small mixed drink is belied by the Fire Department personnel's assessment that she was so intoxicated that she needed to be transported to the emergency room. That compromised condition rendered respondent incapable of attending to the children's needs during the several hours they were effectively unsupervised. In this context, despite the difficulties of respondent's personal situation, Family Court had sound reason to conclude that her voluntary intoxication placed the children in imminent risk of harm before the shelter staff intervened (see Matter of Wolfgang L. [Natalia A.], 188 AD3d 688, 689 [2020], lv denied 36 NY3d 908 [2021]; Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d 1031, 1034-1035 [2020]; Matter of Heather D., 17 AD3d 1087, 1087 [2005]; compare Matter of I.A. [Devona H.], 132 AD3d 757, 758-759 [2015]; Matter of Cadence GG. [Lindsay II.], 124 AD3d 952, 954-955 [2015]). Respondent's further contention that she was deprived of the effective assistance of counsel is unpersuasive.
ORDERED that the order is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: The parties have not raised any arguments concerning the remaining allegation in the petition, which was not addressed by Family Court. In any event, we find that the record contains no support for that allegation.