Matter of R.E. (S.F.) (2023 NY Slip Op 00253)

Matter of R.E. (S.F.)

2023 NY Slip Op 00253

Decided on January 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

533995
[*1]In the Matter of R.E., Alleged to be a Neglected Child. Ulster County Department of Social Services, Respondent; S.F., Appellant. (Proceeding No. 1.)
In the Matter of R.E., Alleged to be a Neglected Child. Ulster County Department of Social Services, Respondent; C.G., Appellant. (Proceeding No. 2.)

Calendar Date:December 15, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Cliff Gordon, Monticello, for S.F., appellant.
Constantina Hart, Kauneonga Lake, for C.G., appellant.
Ulster County Department of Social Services, Kingston (Rebecca L. Balzac of counsel), for respondent.
Alexander W. Bloomstein, Hillsdale, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Ulster County (Anthony G. McGinty, J.), entered August 17, 2021, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent S.F. (hereinafter the father) and respondent C.G. (hereinafter the mother) are the parents of a child (born in 2018). In December 2019, petitioner commenced these neglect proceedings against respondents, alleging that respondents placed the child at substantial risk of harm by utilizing illegal drugs and/or drinking alcohol to excess while caring for the child and by engaging in acts of domestic violence against one another in the child's presence.[FN1] The mother consented to the removal of the child, and, following a hearing as to the father, the child was placed in petitioner's care and custody. Following a fact-finding hearing on the petitions, Family Court issued a bench decision finding that several of the domestic violence incidents alleged constituted acts of neglect. At the dispositional hearing, respondents consented to the child's continued placement with petitioner. Family Court then entered an order of fact-finding and disposition, from which respondents appeal.
"[A] party seeking to establish neglect must show, by a preponderance of the evidence (see Family Ct Act § 1046 [b] [i]), first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and[,] second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]; see Family Ct Act § 1012 [f] [i] [B]). "Not every child exposed to domestic violence is at risk of impairment" (Nicholson v Scoppetta, 3 NY3d at 375), but "[e]ven a single act of domestic violence may be sufficient to establish neglect if the child is present for such violence and is visibly upset and frightened by it" (Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 963 [3d Dept 2020] [internal quotation marks, brackets and citation omitted]; see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1077 [3d Dept 2022], lv denied 38 NY3d 912 [2022]). In terms of whether the harm is the consequence of some failure of the respondent parent, "[c]ourts must evaluate parental behavior objectively: would a reasonable and prudent parent have so acted, or failed to act, under the circumstances then and there existing" (Nicholson v Scoppetta, 3 NY3d at 370; see Matter of Alexis TT. [Andrea VV.], 204 AD3d 1311, 1312 [3d Dept 2022]).
According appropriate deference to Family Court's factual findings and credibility determinations (see Matter of Andreija N. [Michael N.-Tiffany O.], 206 AD3d 1081, 1084 [3d Dept 2022]), the evidence at the fact-finding hearing revealed, among other abusive, erratic or otherwise concerning [*2]behavior, two specific incidents of domestic violence that support the court's findings of neglect.[FN2] During the first of these, in July 2019 when the child was one year old, the father accused the mother of hiding the father's drugs and proceeded to ransack their residence to locate same. In that process, the father literally threw the mother out of the front door and locked it. As the mother attempted to break a window to reenter the residence and retrieve the child, the father threw the child out of the front door, stating, "[h]ere is your f****** baby." The mother testified that she caught the child in mid-air. She then ran next door with the child to where the paternal grandmother lived and asked the grandmother to go over to respondents' residence and calm the father down. The grandmother refused to do so and told the mother that she needed to handle the situation herself. While still holding the child, the mother elected to take a knife from the grandmother's residence and return outside, where she ultimately encountered the father and, according to the credited testimony, stabbed him. The police arrived moments later. This incident resulted in the mother's arrest and her conviction of endangering the welfare of a child. The second incident took place in April 2020, when the child was about 20 months old. During the incident, the father grabbed the child from the mother's arms and threw the mother on the floor while he was holding the child. The court expressly credited the testimony of the mother and the mother's case manager that the father's conduct caused the child to cry, scream and become visibly fearful. The father then stated to the child that he and the child would kill the mother and make it appear as if it were a suicide.
Turning first to the father, although there were a multitude of instances of troubling behavior for which it was unclear from the proof where the child was or how he was impacted (see generally Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1539-1540 [3d Dept 2022], lv denied 39 NY3d 904 [2022]), for both of the foregoing incidents, the credited testimony established that the child was present and that his physical and/or emotional condition was either actually impaired or in imminent danger of becoming so. That impairment was a result of the father's actions, which plainly fell below those of a reasonable and prudent parent. Family Court's finding that petitioner met its burden as to the father is therefore supported by a sound and substantial basis in the record (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d at 1078-1079; Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1095 [3d Dept 2017]; Matter of Paige AA. [Anthony AA.], 85 AD3d 1213, 1216 [3d Dept 2011], lv denied 17 NY3d 708 [2011]).
As to the mother, we are not persuaded by the contention that her actions during the July 2019 incident were those of a reasonable and prudent parent in similar circumstances. It is not disputable that the mother was [*3]a victim of ongoing domestic violence, beyond the two incidents described above. Thus, what course of action constituted a minimum degree of care for her may include the consideration of well-established risks faced by such victims (see Nicholson v Scoppetta, 3 NY3d at 371; see generally Matter of Elizabeth B. v New York State Off. of Children & Family Servs.,149 AD3d 8, 11-12 [3d Dept 2017]). Here, however, the evidence established only that the grandmother refused to affirmatively intervene; there is no indication that the mother was told to leave the grandmother's residence, or, more specifically, told to leave with the child, or that the mother was unable to contact the authorities. There is also no indication that the father tried to enter the grandmother's residence or that the mother believed that she was followed there by him. Having reached a place of relative safety, the mother's decision to obtain a weapon and return to the fray with the child in tow cannot be said to be the act of a reasonable and prudent parent in her circumstances. Therefore, Family Court's finding that the mother neglected the child by virtue of her conduct during the July 2019 incident will also not be disturbed (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d at 1079; Matter of Heaven H. [Linda H.], 121 AD3d 1199, 1200-1201 [3d Dept 2014]; Matter of Anthony FF. [Lisa GG.], 105 AD3d 1273, 1274 [3d Dept 2013]).[FN3]
Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The petition concerning the father was twice amended to include additional incidents of drug use and/or domestic violence that postdate the commencement of these proceedings.

Footnote 2: Although the father is correct that a third incident cannot form the basis for a neglect finding due to the lack of evidence of the event's impact on the child, we note that Family Court otherwise clearly and specifically limited its findings to incidents for which the child was present and directly affected by the violence.

Footnote 3: The mother's argument that Family Court abused its discretion in continuing the child's placement with petitioner is not properly before us given her consent to that disposition (cf. Matter of Natalee M. [Nathan M.], 155 AD3d 1466, 1470 [3d Dept 2017], lv denied 31 NY3d 904 [2018]).