Matter of Alachi I. (Shelby J.) (2023 NY Slip Op 01822)

Matter of Alachi I. (Shelby J.)

2023 NY Slip Op 01822

Decided on April 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 6, 2023

531579 
[*1]In the Matter of Alachi I. and Others, Alleged to be Neglected Children. Otsego County Department of Social Services, Respondent; Shelby J., Appellant.

Calendar Date:February 22, 2023

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Rural Law Center of New York, Inc., Castleton (Keith F. Schockmel of counsel), for appellant.
Denise J.B. Hollis, County Attorney, Cooperstown (Monica Carrascoso of counsel), for respondent.
Veronica Reed, Schenectady, attorney for the children.

Garry, P.J.
Appeal from an order of the Family Court of Otsego County (Brian D. Burns, J.), entered March 13, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent (hereinafter the mother) is the mother of the three subject children (born in 2015, 2017 and 2018). Having fled an abusive relationship in Georgia, the mother came to New York with the children and began living in a shelter for victims of domestic violence. Shortly thereafter, the shelter staff made a series of hotline calls to petitioner, alleging that the mother had left the children unsupervised in several situations and needed help in managing their behavior. These hotline calls ultimately resulted in six indicated Child Protective Services reports against the mother. The mother acknowledged her need for support and was attempting to open a preventative services case, at the suggestion of shelter staff. She also requested respite care, ultimately placing all three children with petitioner for a brief period so that she could attend to a custody matter in Georgia, where the abusive father had initiated proceedings. Petitioner commenced this neglect proceeding against her during that period and obtained emergency removal of the children. Following a fact-finding hearing, Family Court determined that the children were neglected, and, after a dispositional hearing, the court ordered that the children continue to be placed in petitioner's care and custody. The mother appeals solely from the order finding the children to be neglected.
"[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and[,] second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004] [internal citation omitted]; see Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1538 [3d Dept 2022], lv denied 39 NY3d 904 [2022]). Notably, impairment cannot be said to be imminent if it is only hypothetical or possible, rather than near or impending (see Nicholson v Scoppetta, 3 NY3dat 369; Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [3d Dept 2019]). Additionally, a parent's conduct must be "measured under an objective standard — would a reasonable and prudent parent have so acted, or failed to act, under the circumstances then and there existing" (Matter of Leah VV. [Theresa WW.], 157 AD3d 1066, 1066 [3d Dept 2018] [internal quotation marks and citation omitted], lv dismissed 31 NY3d 1037 [2018]; see Matter of Jarrett SS. [Jade TT.—Scott SS.], 183 AD3d 1031, 1032 [3d Dept 2020]).
At the fact-finding hearing, the mother testified that she had relocated from Georgia to New [*2]York to live with her sister after a particularly severe beating, which had occurred in the presence of the oldest child. After the relocation, the father, who had a history of tracking the mother down following her previous attempts to end their relationship, began making threats. She therefore moved into a shelter, in an effort to protect her sister's family. There, she experienced difficulties supervising her three highly active children, then all under the age of four. The testimony of several witnesses revealed that the oldest child struggled with extreme emotional dysregulation and often experienced violent outbursts. The mother's difficulty in managing the oldest child's behavior while maintaining consistent supervision of the three young children led to the several hotline calls placed by shelter staff. A staff member described instances where the oldest child was out of control and the mother was overwhelmed and frustrated, once "yanking" him by the arm. There was also testimony that, on several occasions, the mother left the youngest child alone for up to 10 minutes. On one occasion, the two oldest children were able to exit the shelter, which did not have locks on its doors, and were seen in the shelter's driveway, where the mother ran and retrieved them; bells were then installed on the doorway. The youngest child once pulled down a potted plant, and, on another occasion, was placed in a foam infant seat on a picnic table while the mother played with the other children a short distance away. The shelter staff member also testified that the mother left the youngest child unsupervised and sleeping on a bed on one occasion while she went outside to smoke a cigarette, during which time the child fell onto the floor. The youngest child also once fell out of a baby carriage while the mother was cooking lunch in the kitchen. Fortunately, the children were not injured in any of these incidents.
As Family Court noted, the mother testified that she reached out to petitioner for help, but, other than the brief period of respite care and the purchase of a bus ticket to return to Georgia for the legal proceeding occurring there, she did not receive meaningful assistance.[FN1] She further testified that petitioner's suggestions that she enroll the oldest child in Head Start and engage with a local mental health clinic and a violence intervention program were unhelpful, as she had already taken those steps on her own. The only service suggested by petitioner that the mother declined was enrollment in parenting classes, which she had previously completed in Georgia. Petitioner also did not offer any help to the oldest child in dealing with the trauma he had experienced. After the mother accepted petitioner's offer of respite care to allow her to travel to Georgia, rather than opening a preventative services case for her, petitioner instead, without explanation for its timing, commenced this neglect proceeding against her. As Family Court further noted, [*3]the mother expressed frustration in her testimony, wondering why any victims of domestic violence would remove themselves and their children from an abusive household and seek help from petitioner when all they could expect in response to their entreaties, rather than assistance, is separation from their children.
Family Court expressly noted the mother's acknowledgments of her desperation and inability to control the oldest child's behavior, and the court aptly attributed the oldest child's emotional condition to the severe domestic violence he had witnessed his father perpetrate against the mother. An adjudication of neglect based upon emotional impairment must include a determination "that the actual or threatened harm to the child is a consequence of the failure of the parent . . . to exercise a minimum degree of care" (Nicholson v Scoppetta, 3 NY3d at 368; see Family Ct Act § 1012 [f]). As the oldest child's emotional difficulties are, at least to some great extent, properly attributed to the trauma he experienced, rather than any failing of the mother, his condition does not support the neglect finding. Family Court further concluded that the other two children were neglected because the oldest child's behaviors presented a risk to his siblings' physical well-being. However, at no point did petitioner proffer evidence that either of the younger siblings had been injured by the oldest child, nor is there any evidence that such physical harm was imminent; at most, this conclusion is premised upon possible future harm, which is insufficient to support an adjudication of neglect (see Matter of Aiden LL. [Tonia C.], 191 AD3d 1213, 1215 [3d Dept 2021]; Matter of Jordyn WW. [Tyrell WW.], 176 AD3d at 1349).
Likewise, while leaving children unattended, even for a brief period, can constitute a failure to exercise a minimum degree of parental care under certain circumstances (see Matter of Hakeem S. [Sarah U.], 206 AD3d at 1539; Matter of Jarrett SS. [Jade TT.—Scott SS.], 183 AD3d at 1035), it does not amount to neglect in all cases, even in certain circumstances where the unattended child is accidentally injured (see Matter of Janique Y., 256 AD2d 1053, 1053-1054 [3d Dept 1998]; cf. Matter of Amir L. [Chantel B.], 104 AD3d 505, 506 [1st Dept 2013]; Matter of Christopher Anthony M., 46 AD3d 896, 898-899 [2d Dept 2007]). Here, considering the surrounding circumstances, we do not find that the evidence revealed such a failure. Nor will we fault the mother for her inability to control all three young children while attending to their various needs — as was the case in the incidents where the youngest child was left in a foam infant seat on a table and where the two older children ran outside of the shelter — or while taking care of necessary chores — as was the case in the incident where the youngest child fell out of a baby carriage. In our view, the mother's conduct during these alleged incidents of neglect did not fall below a minimum degree of parental [*4]care; nor were the children physically impaired, and it was not demonstrated that any sort of impairment was imminent (see Family Ct Act § 1012 [f]; Matter of Hakeem S. [Sarah U.], 206 AD3d at 1539; Matter of Javan W. [Aba W.], 124 AD3d 1091, 1093 [3d Dept 2015], lv denied 26 NY3d 905 [2015]; cf. Matter of Matthew WW. v Johnson, 20 AD3d 669, 671 [3d Dept 2005]). As to the incident in which the mother grabbed the oldest child by the arm, no evidence was presented demonstrating that he was physically harmed, and the testimony of shelter staff was supportive; these witnesses viewed her discipline, on the whole, as appropriate. We thus further conclude that this allegation is insufficient to support a finding of neglect (see Matter of Laequise P. [Brian C.], 119 AD3d 801, 802 [2d Dept 2014]; compare Matter of Bryce Y. [Clint Y.], 200 AD3d 1129, 1130-1131 [3d Dept 2021], lv dismissed 38 NY3d 1019 [2022]).
Most critical to our review and determination, as acknowledged by Family Court and argued by the attorney for the children upon appeal, is the fact that the mother was at all times actively acknowledging the difficulties posed by her circumstances and seeking aid. The testimony of shelter staff, and some of the testimony of petitioner's caseworkers, fully revealed that any parent would have struggled to meet the needs of these three young children. It was further made clear that shelter staff were also actively seeking to obtain help on the mother's behalf, in the only way they knew to do so, by repeatedly contacting petitioner. For these and the reasons stated above, we reverse (see Matter of Hakeem S. [Sarah U.], 206 AD3d at 1540; Matter of Jordyn WW. [Tyrell WW.], 176 AD3d at 1349-1350).
Finally, as mentioned above, the appeal here arises solely from Family Court's finding that the mother neglected the children, although the record includes a transcript from the dispositional hearing, which cryptically presents troubling allegations and potential concerns. We cannot reach or address those matters on this limited record, and we find the delay in bringing this appeal to this Court exasperating, even given the delays possibly attributable to the COVID-19 pandemic.[FN2] Although Family Court made meaningful and substantial efforts to hear and determine the matter promptly, this case now nonetheless clearly illustrates the adage that justice delayed is justice denied. Given that the law permits this sort of intermediate appeal as of right in neglect cases (see Family Ct Act § 1112 [a]), to, as relevant here, promptly correct "the trauma and deprivation of rights caused by unnecessary removals" (Mem in Support, Bill Jacket, L 1991, ch 34 at 10), it is imperative that we ensure that our systems are properly equipped to address the needs of Family Court litigants. This reversal now occurs after a potential separation of the three young children from their mother extending for many years. We cannot discern what may have occurred in the lives of the family [*5]in this enormous span of time, whether there was visitation, whether the family encountered additional hardships, or what else may have transpired. On this limited record, it instead appears that we have failed to address the pressing needs of this family, and the children, at each step.
Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: No arrangements were made, nor funds furnished, for her return trip.

Footnote 2: Although the order before us was entered in March 2020, the mother's appeal was not perfected until January 2022. The matter was then not fully perfected until the filing of petitioner's brief in October 2022. We are now, more than three years later, addressing only a part of the ultimate determination in this proceeding, arising from events occurring in September 2019.