Matter of Joshua R. (Kimberly R.) (2023 NY Slip Op 02357)

Matter of Joshua R. (Kimberly R.)

2023 NY Slip Op 02357

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

533761 
[*1]In the Matter of Joshua R. and Others, Alleged to be Neglected Children. Schuyler County Department of Social Services, Respondent; Kimberly R., Appellant. (Proceeding No. 1.)
In the Matter of Joshua R. and Others, Alleged to be Neglected Children. Schuyler County Department of Social Services, Respondent; George R., Appellant. (Proceeding No. 2.)

Calendar Date:March 27, 2023 

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ. 

Lisa K. Miller, McGraw, for Kimberly R., appellant.
Larisa Obolensky, Delhi, for George R., appellant.
Steven J. Getman, County Attorney, Watkins Glen (Kristin E. Hazlitt of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the children.

McShan, J.
Appeal from an order of the Family Court of Schuyler County (Matthew C. Hayden, J.), entered July 15, 2021, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent Kimberly R. (hereinafter the mother) is the mother of the five subject children (born in 2008, 2011, 2013, 2015 and 2016).[FN1] Respondent George R. (hereinafter the father) is the biological father of the four younger children, the stepfather of the oldest child and the mother's husband. In December 2020, following an investigation into a hotline report received by petitioner, separate neglect petitions were filed against the mother and the father, both alleging that the subject children were neglected. Specifically, the petitions alleged the use of excessive corporal punishment, exposure of the children to a chaotic home environment, lack of cooperation with services and general lack of supervision. Following a fact-finding hearing, the subject children were adjudicated as neglected and were later removed and placed in petitioner's care following a dispositional hearing. The mother and the father each appeal.
We affirm. "In a neglect proceeding, petitioner bears the burden of establishing, by a preponderance of the evidence, that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the parent's failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship" (Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1538 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 904 [2022]; see Family Ct Act § 1012 [f] [i] [B]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]). Petitioner bears the burden of demonstrating "serious harm or potential harm to the child[ren]" as opposed to "what might be deemed undesirable parental behavior" (Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [3d Dept 2019] [internal quotation marks and citation omitted]; see Matter of Hakeem S. [Sarah U.], 206 AD3d at 1538). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Leo RR. [Joshua RR.], 213 AD3d 1190, 1191-1192 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 963 [3d Dept 2020]).
Upon our review of the record, the characterization of the environment that the children were regularly exposed to was justifiably described as "chaotic." Petitioner had been involved with the family for more than 10 years and, despite petitioner's efforts to provide the family with numerous services, the parents had made little progress in rectifying many of the concerns that precipitated [*2]petitioner's involvement. To this end, the marital relationship between the mother and the father had deteriorated and the mother had ceased occupying the familial home, instead residing at her neighbor's residence with five other adults and four other children. Four of the subject children remained with the father in the marital home and one of the children had accompanied the mother to reside in the neighbor's residence. The mother described the relationship between her household and the neighbor's home where she resided as "one big, huge family." Notwithstanding that description, the atmosphere at the neighbor's home reflected a transient environment where numerous adults and children were intermittently present, moving in and out at random. The testimony reflected that, on occasion, as many as 20 people, adults and children combined, were occupying the three-bedroom trailer. Of particular significance, petitioner's witnesses noted that there were reports from the mother and the neighbor that the people residing at the home "were [engaged in] illegal activities," and there was testimony concerning an individual who had resided in a camper on the neighbor's property and had hidden weapons around the yard in areas where the children would play. Another individual in the home apparently suffered from a diagnosed mental illness and, according to the mother, "was a complete wacko" when he did not take his medication. Petitioner also learned that the older child who was living with the mother at the neighbor's residence was sleeping on the floor with nothing beyond a blanket to provide comfort. When the unacceptable nature of the child's sleeping arrangement was brought to the mother's attention, she was initially dismissive, before she eventually acquiesced to petitioner's request and obtained an inflatable mattress. However, petitioner discovered that the mother was not inflating the mattress for the child, describing the endeavor as "a hassle." Petitioner provided the mother with a referral to obtain more suitable housing, which the mother made no efforts to follow up on and, to that end, the mother had made no effort to formulate a plan to move out of the neighbor's home.
Petitioner's caseworker testified that the aforementioned arrangement often elicited confusion amongst the children as to which residence they lived in and who was responsible for parenting them. Petitioner's witnesses noted that they had implemented a safety plan geared toward providing structure and implementing routines for the children, however, the testimony reflected that the mother and the father failed to adhere to that plan and were occasionally dismissive of its efficacy. The testimony also established that the four eldest children had various issues at school, including multiple reported instances of struggles to stay awake, a lack of any meaningful academic progress, misbehavior and acts of aggression toward siblings, fellow students and a bus driver.[FN2] The proof further [*3]established that the mother and the father had regularly failed to follow through on providing the children with various services. Specifically, one of the children had difficulties at school attributable to ill-fitting glasses and the child did not receive proper prescription eyewear until nine months after it was brought to the mother's attention. Further, four of the five children had been previously dismissed from mental health treatment due to repeated absences.[FN3] The record further reflects that the mother was enrolled and unsuccessfully discharged from mental health services on six separate occasions over the course of petitioner's involvement with her. Although the mother's therapist testified that she had made progress on various aspects of her parenting during their brief time working together, Family Court attributed limited weight to his testimony and, on the record before us, we find no reason to disturb the court's credibility determination to that effect.[FN4]
Altogether, we find that the failure to provide sufficient supervision and an appropriate environment, under the circumstances presented, rises above a mere disagreement with parenting methods and supports a finding of neglect (see Matter of Alyson J. [Laurie J.], 88 AD3d 1201, 1203 [3d Dept 2011], lv denied 18 NY3d 803 [2012]; Matter of John H.M., 54 AD3d 763, 764 [2d Dept 2008], lv denied 11 NY3d 714 [2009]; Matter of Melissa R., 162 AD2d 754, 755-756 [3d Dept 1990]; see also Matter of Ahriiyah VV. [Rebecca VV.], 160 AD3d 1140, 1142 [3d Dept 2018], lv denied 31 NY3d 911 [2018]; Matter of Hannah L. [Dwayne L.], 113 AD3d 1137, 1138 [4th Dept 2014], lv denied 22 NY3d 865 [2014]).[FN5] The mother dedicates a significant portion of her brief ascribing fault for the various issues with the subject children to her belief that they are autistic. However, beyond some terse indication that the child who was the subject of the permanent neglect petition should undergo further testing in that respect, the record is devoid of a definitive diagnosis as to the other children, and we will not read such a finding into the record. In any event, each of the children that are the subject of the petition, other than the youngest, had a recognized developmental disability and, while the mother suggests that those disabilities alone provided an explanation for the various behavioral concerns they exhibited, our assessment of the record satisfies us that there is credible proof that both the mother and the father's failure to provide a more structured environment in the face of those disabilities caused harm to the eldest four children that are the subjects of the petition (compare Matter of Alachi I. [Shelby J.], ___ AD3d ___, ___, 2023 NY Slip Op 01822, *4 [3d Dept 2023]). Further, we agree with Family Court's determination that the entirety of circumstances presented by the mother and the father's care of the other children placed the youngest child at substantial risk of harm (see Family Ct Act § 1046 [*4][a] [i]; Matter of Bryce Y. [Clint Y.], 200 AD3d 1129, 1131 [3d Dept 2021], lv dismissed 38 NY3d 1019 [2022]; Matter of Annalise L. [Jalise P.], 170 AD3d 835, 836 [2d Dept 2019]).[FN6]
As to Family Court's determination to remove the children, "[a] dispositional order in a neglect proceeding must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1079-1080 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 912 [2022]; Matter of Jamel HH. [Linda HH.], 155 AD3d 1379, 1380 [3d Dept 2017]). "The factors to be considered in making the determination include the parent[s'] . . . capacity to properly supervise the child[ren], based on current information and the potential threat of future . . . neglect" (Matter of Tereza R. [Jose A.], 199 AD3d 921, 923 [2d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Phillips N. [Joy N.], 104 AD3d 690, 691 [2d Dept 2013]). Petitioner's caseworker testified that there had been no improvement in the mother and the father's living situation since the conclusion of the fact-finding hearing and that they continued to receive the same abundance of services from petitioner. To this end, the caseworker noted that petitioner had exhausted all efforts in providing any further services to the family and that the children were at risk of continued harm, particularly considering the mother and the father's failure to implement significant change over the course of several years. The testimony further reflected that, although the children were spending less time at the neighbor's residence in accordance with an order of protection, the mother continued to shuttle back and forth between the homes and the relationship between her and the father remained problematic. The caseworker also testified that petitioner had received another hotline call since the fact-finding hearing concerning a lack of supervision over the children. Altogether, "[n]otwithstanding the proof indicating that [the mother and the father] had participated in some services provided by petitioner, in view of the evidence credited by [Family Court]," we find that the court's determination that removal of the children was in their best interests is supported by a sound and substantial basis (Matter of Asiah S. [Nancy S.], 212 AD3d 1062, 1064 [3d Dept 2023]; see Matter of Kayorie S. [Brandy S.], 214 AD3d 886, ___, 185 NYS3d 293, 294 [2d Dept 2023]; Matter of Alexis AA. [John AA.], 97 AD3d 927, 930 [3d Dept 2012]; see generally Matter of Nathaniel T., 67 NY2d 838, 841 [1986]).[FN7] The mother and the father's remaining contentions, to the extent that they are not expressly addressed herein, have been examined and found to be unavailing.
Clark, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED [*5]that the order is affirmed, without costs.

Footnotes

Footnote 1: The petitions also named another child (born in 2008); however, petitioner was simultaneously pursuing a permanent neglect petition against the mother as to that child, and the fact-finding hearing concerned both the neglect petitions at issue on this appeal as well as the permanent neglect petition. In its fact-finding order, Family Court determined that petitioner had established that five of the children had been neglected and separately determined that the other child had been permanently neglected. In January 2023, we affirmed the dispositional order terminating the mother's parental rights as to the other child (see Matter of Issac Q. [Kimberly R.], 212 AD3d 1049 [3d Dept 2023]).

Footnote 2: The caseworker's testimony reflected that the eldest child suffered from enuresis and encopresis and would have toileting issues at school. We note that there was no indication that the condition was triggered by any conduct on the part of the mother and the father and, thus, the persistence of the condition itself does not evidence neglect (compare Matter of Theresa CC., 178 AD2d 687, 688 [3d Dept 1991]). That being said, in its fact-finding determination, Family Court noted the child's struggles with toileting issues at school but did not directly identify them as evidence of neglect, and instead concluded that the parents failed to "adequately address" the child's medical issues by not seeking any manner of medical treatment until urged to do so by the child's school officials and allowing the child to arrive at school on occasion with soiled diapers (see Matter of David II., 49 AD3d 1093, 1095 [3d Dept 2008]).

Footnote 3: We are cognizant of the impact of the COVID-19 pandemic and the difficulties it placed on attendance at in-person services. Nonetheless, the record adequately reflects that the attendance failures preceded the pandemic and were attributable to the mother and the father.

Footnote 4: Notably, the therapist had not begun engaging the father with any services at the time of the fact-finding hearing.

Footnote 5: The father did not testify during the hearing and, therefore, Family Court's determination to draw a negative inference against him was warranted (see Matter of Cailynn O. [Vincenzo Q.], 192 AD3d 1408, 1413 [3d Dept 2021]).

Footnote 6: While Family Court's fact-finding order does not expressly note that its determination as to the youngest child is predicated on a finding of derivative neglect, such determination is evident from the analysis and conclusion. On that basis, we find that the record supports a determination that the neglect of the other children establishes "a fundamental defect in [the mother and the father's] understanding of the duties of parenthood" (Matter of Jahmya J. [Crystal L.J.], 137 AD3d 1132, 1133 [2d Dept 2016] [internal quotation marks and citations omitted]; see Matter of Bryce Y. [Clint Y.], 200 AD3d at 1131).

Footnote 7: The mother's contention that the attorney for the children impermissibly substituted judgment by not discussing removal with the two oldest children and not putting the children's wishes on the record is unpreserved owing to her failure to seek the attorney's removal (see Matter of Olivia RR. [Paul RR.], 207 AD3d 822, 824 [3d Dept 2022]; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1297 [3d Dept 2017]).