Matter of Baylee F. (Jeanette E.) (2024 NY Slip Op 05163)

Matter of Baylee F. (Jeanette E.)

2024 NY Slip Op 05163

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

CV-22-2313
[*1]In the Matter of Baylee F., Alleged to be a Neglected Child. Clinton County Department of Social Services, Respondent; Jeanette E., Appellant. (Proceeding No. 1.)
In the Matter of Baylee F., Alleged to be a Neglected Child. Clinton County Department of Social Services, Respondent; Michael F., Appellant. (Proceeding No. 2.)

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

Michelle I. Rosien, Philmont, for Jeanette E., appellant in Proceeding No. 1.
Lisa A. Burgess, Indian Lake, for Michael F., appellant in Proceeding No. 2.
Clinton County Department of Social Services, Plattsburgh (Patrick J. McFarlin of counsel), for respondent.
Andrew F. Bailey, Plattsburgh, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Clinton County (Timothy J. Lawliss, J.), entered December 2, 2022, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent Jeanette E. (hereinafter the mother) and respondent Michael F. (hereinafter the father) are the parents of the subject child (born in 2022). The parents also had two other children together; the first was found to be neglected by both parents in 2014 and the second was found to be neglected in 2019.[FN1] Both parents eventually surrendered their parental rights to each of these children. Additionally, the mother had two other children apart from her relationship with the father. In 2013, Family Court found that she had neglected the first child and, in 2015, the court found that she had neglected the second child. The mother surrendered her parental rights to each of these children. The father also had another child with a different mother, and Family Court determined in 2011 that he had neglected that child. The father's parental rights to that child were terminated in 2013.
Shortly after the subject child was born, petitioner removed the child from the care and custody of the parents on an emergency basis.[FN2] Petitioner thereafter filed petitions alleging that the parents had neglected and derivatively neglected the child. A fact-finding hearing was subsequently held over the course of four days, at the conclusion of which Family Court determined that petitioner met its burden of proving that the child had been neglected and derivatively neglected by both parents. Both the mother and the father appeal, and we affirm.
Turning first to the finding of neglect, "petitioner bears the burden of establishing, by a preponderance of the evidence, that the child[ ]'s physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the child[ ] results from the parent's failure to exercise a minimum degree of care in providing the child[ ] with proper supervision or guardianship" (Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1538 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 904 [2022]; see Matter of Nina VV. [Wendy VV.], 216 AD3d 1215, 1216 [3d Dept 2023]). As relevant here, although "evidence of [a parent's] intellectual disabilities, alone, will not support a finding of neglect, said disabilities may properly form the basis of such a finding when coupled with other factors tending to show imminent danger to the child's well-being" (Matter of Joseph MM. [Clifford MM.], 91 AD3d 1077, 1079 [3d Dept 2012] [citations omitted], lvs denied 18 NY3d 809 [2012], 18 NY3d 809 [2012]; see Matter of Wynter V. [Felitta V.], 230 AD3d 505, 506 [2d Dept 2024]; Matter of Anna Marie SS., 306 AD2d 659, 660 [3d Dept 2003], lv denied 100 NY2d 516 [2003]). "Indeed, even when a child has not been actually [*2]impaired, a finding of neglect is appropriate to prevent imminent impairment, which is an independent and separate ground on which a neglect finding may be based. In such cases, the court is not required to wait until a child has already been harmed before it enters a finding of neglect" (Matter of Joseph L. [Cyanne W.], 168 AD3d 1055, 1056 [2d Dept 2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 902 [2019]). In assessing Family Court's determination in a neglect proceeding, we accord great deference to its factual findings and assessment of credibility and will not disturb such findings if they are supported by a sound and substantial basis (see Matter of Leo RR. [Joshua RR.], 213 AD3d 1190, 1191-1192 [3d Dept 2023]).
At the hearing, Jacob Hadden, a psychologist, provided testimony about the parental capacity evaluations he conducted with the mother in 2013 and 2019. Hadden diagnosed the mother with, among other mental health conditions, an intellectual disability that manifested in various adaptive deficits, such as her inability to manage basic tasks necessary to her own self-care, including the inability to work, manage her finances and maintain her home. Relative to her ability to parent the child, Hadden testified that he did not believe she possessed the ability to do so without extensive daily support, such as a live-in aide, to help her care for herself and the child. Psychologist Richard Liotta testified to his evaluations of the mother in January 2015 and December 2015, and substantively echoed Hadden's conclusions relative to the mother's inability to effectively parent at that time and for the foreseeable future.
As to the father, Liotta conducted evaluations in 2012 and 2015 and in both instances diagnosed him with antisocial personality disorder, an impulse control disorder and an intellectual disability that manifested in, among other things, various deficits in his adaptive functioning. Although Liotta acknowledged that antisocial personality disorders can occasionally improve with treatment or age, Liotta noted that the father's condition was unlikely to be amenable to treatment due to his refusal or inability to recognize that he has a disorder. Consistent with that premise, the record reflects that the father's anger issues continued to manifest themselves in recent interactions with petitioner's employees and an incident involving law enforcement. Overall, Liotta concluded that the father's impulsivity and anger control issues, along with his intellectual limitations, "would significantly impact his capacity to parent adequately and appropriately" and that "his potential risk to any child in his care was substantial."
Although the record reflects the passage of a moderate amount of time between the dates of their respective evaluations of the parents and the hearing, both experts emphasized that the intellectual impairments afflicting both parents are relatively stable and would not meaningfully improve [*3]with time absent significant intervention. Moreover, both experts noted that the parents' respective intellectual limitations contributed to their inability to perceive or accept that they had any underlying conditions that limited their ability to parent. These conclusions were buttressed by the testimony of both parents, which reflected their lack of insight into their impairments, as both of them continued to deny their intellectual limitations or need for any services, believing that they already possessed all the parenting skills required to provide adequate care to the child. All told, paying the appropriate deference to Family Court's findings, we find that the record adequately supports the determination that the child's placement in the care of either parent would subject the child to imminent, not just possible, danger of injury or impairment, thus supporting the finding of neglect (see Matter of Caylin T. [Christine T.], 229 AD3d 859, 861 [3d Dept 2024]; Matter of Hakeem S. [Sarah U.], 206 AD3d at 1538; Matter of Johnathan Q. [James Q.], 166 AD3d 1417, 1419 [3d Dept 2018]).
For similar reasons, we find that Family Court's determination that the child was derivatively neglected is sufficiently supported. "Derivative neglect is established where the evidence demonstrates an impairment of parental judgment to the point that it creates a substantial risk of harm for any child left in that parent's care, and the prior neglect determination is sufficiently proximate in time to reasonably conclude that the problematic conditions continue to exist" (Matter of Renezmae X. [Kimberly X.-Chad W.], 173 AD3d 1289, 1290 [3d Dept 2019] [internal quotation marks and citations omitted], lv dismissed 34 NY3d 990 [2019]; see Matter of Jade F. [Ashley H.], 149 AD3d 1180, 1181-1182 [3d Dept 2017]). Initially, we reject respondents' contentions that the prior finding of neglect in 2019 was not sufficiently proximate to serve as a basis for a derivative finding in this proceeding. There is no bright-line temporal limitation that would exclude prior neglect findings from serving as the predicate of a later determination of derivative neglect (see Matter Iryanna I. [Benjamin K.], 132 AD3d 1096, 1097 [3d Dept 2015]). In this instance, the three-year gap between the most recent adjudication, and the pattern of conduct evidenced in the prior determinations dating back to 2013, are not so attenuated as to foreclose an assessment of whether the impairment in parental judgment continued to exist at the time of the hearing (see Matter of Michael N. [James M.], 79 AD3d 1165, 1168 [3d Dept 2010]; Matter of Paige WW. [Charles XX.], 71 AD3d 1200, 1203 [3d Dept 2010]).
On that inquiry, the most recent neglect findings from 2019 stemmed from, among other things, the parents' respective intellectual disabilities and adaptive deficits, alongside other related mental health concerns. As we have already noted, the record reflects that the parents continuously deny or minimize [*4]those conditions and demonstrate no inclination to address them in a meaningful way. Although each parent had engaged in limited mental health counseling to address their other mental health diagnoses and had recently attended parenting classes as recommended by petitioner, the record, as well as their testimony, reflect marginal participation in those interventions and their lack of insight into the need to do so (see Matter of Wynter V. [Felitta V.], 230 AD3d at 506; Matter of C'D.K.J. [Kamesha D.L.], 220 AD3d 418, 419-420 [1st Dept 2023]; Matter of Landon W., 35 AD3d 1139, 1141 [3d Dept 2006]). Altogether, we find that the record amply supports Family Court's determination that both parents derivatively neglected the child by virtue of the persistence of the conditions that formed the basis of the current and prior neglect findings (see Matter of Juliet W. [Amy W.], 216 AD3d 1424, 1425-1426 [4th Dept 2023], lv denied 40 NY3d 1059 [2023]; Matter of Warren RR. [Brittany Q.], 143 AD3d 1072, 1075 [3d Dept 2016], lvs denied 29 NY3d 905 [2017], 29 NY3d 905 [2017]; Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160, 1164 [3d Dept 2015], lv denied 25 NY3d 914 [2015]; Matter of Neveah AA. [Alia CC.], 124 AD3d 938, 939-940 [3d Dept 2015]; Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1241 [3d Dept 2012]).
Egan Jr., J.P., Pritzker, Lynch and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court also determined that the father had derivatively neglected the child that was the subject of the 2019 order.
Footnote 2: Both parents sought return of the child several days after the removal. As a result, a hearing was held pursuant to Family Ct Act § 1028. Although Family Court found that the child's initial removal from the hospital was improper, the court ultimately ordered that the child remain in petitioner's custody while neglect proceedings were pending, "to avoid imminent risk to the subject child's life or health."